BETTENDORF METAL WHEEL CO. v. P. P. MAST & CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1911.)

No. 2,108.

TRUSTS (§ 358*)—FOLLOWING TRUST FUNDS—INSOLVENCY OF TRUSTEE.

Insolvent, being indebted to intervener prior to the institution of receiver proceedings, assigned certain accounts to secure the indebtedness, under an agreement to collect the accounts and pay the same in liquidation of intervener's claim. The insolvent, out of the proceeds collected from such assigned claims, misappropriated and used in its business $5,625.93, of which $2,517.19 was expended for labor, $539.62 for materials, $691.62 for general expenses, and $1,877.50 was paid on bills payable in settlement of past-due accounts. The labor and material were used in making products manufactured by the insolvent. *Held*, that with reference to no part of such misapplied assets was it sufficiently shown by such facts that the body of the assets coming into the hands of the receiver had been augmented thereby, and that there was therefore no such following of the trust fund as would entitle intervener to a preference for the assets so misapplied.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 553; Dec. Dig. § 358.*]

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

In the matter of the application for the appointment of a receiver for P. P. Mast & Co., in which the Bettendorf Metal Wheel Company intervened, claiming the proceeds of certain assigned claims. From a decree denying intervener's claim for preference, it appeals. Affirmed.

James Johnson, Jr., for appellant.
Harry L. Gordon, for appellee receiver.

Before SEVERENS and KNAPPEN, Circuit Judges, and DENISON, District Judge.

DENISON, District Judge. About February 11, 1908, the United States Circuit Court for the Southern District of Ohio, proceeding on a bill filed for that purpose, appointed a receiver for P. P. Mast & Co., a corporation. After leave duly obtained, the Bettendorf Metal Wheel Company, the appellant herein, filed, in such receivership cause, its intervening petition, alleging that on October 22, 1907, P. P. Mast & Co. assigned to the intervener certain claims and accounts receivable belonging to P. P. Mast & Co., such assignment being to secure the indebtedness existing from P. P. Mast & Co. to the intervener; that it was agreed that such accounts should be collected by the president of P. P. Mast & Co., acting as agent for the intervener, and the proceeds remitted to the intervener; that the sum of about $7,000 was so collected by P. P. Mast & Co., and was not remitted, but was used by P. P. Mast & Co. in its business; and that such fund, in substituted form, came into the possession of the receiver upon his appointment. The petition prayed the declaration of a lien for this amount against the assets in the hands of the receiver. The receiver interposed a

formal denial, and the issue came on to be tried before the court, without a jury, the evidence being taken in open court as in a trial at law. The court found that the fund misapplied was not sufficiently traced into the hands of the receiver, and dismissed the petition. The intervener appeals.

The evidence, by testimony and by stipulation, was made to appear upon the record by the settling and filing of a bill of exceptions. The original receivership cause was a proceeding in equity, the intervening petition was an equitable proceeding, and the substantial issue, viz., the following of the trust fund, was a purely equitable subject-matter. A bill of exceptions is not appropriate in a suit in equity. However it is certified that this bill of exceptions contains all the evidence, and we are not inclined to refrain on this technical ground from considering the merits of the appeal.

It appears that P. P. Mast & Co. was engaged in the business of manufacturing and selling agricultural implements, and the sole evidence as to the time when the collections were made and misapplied and the extent and nature of the misapplication, and the body of assets which came to the receiver is contained in the following stipulation:

"It is admitted that, of the accounts included in the purported assignment of October 22, 1907, there were collected and used in the business of P. P. Mast & Co. $5,625.93; that of said sum $5,625.93 the sum of $2,517.19 was expended for labor, $539.62 for material, $691.62 for general expenses, and $1,877.50 were paid out on bills payable in settlement of past-due accounts. It is admitted that the labor and material above referred to were expended in the making of drills, cultivators, and other products which were manufactured by the company."

We think the District Judge was right in his conclusion, and that this evidence did not satisfy the burden resting on the intervener to establish that the body of the assets coming to the receiver had been swelled by the use of the trust fund. As to the amount expended in general expenses and the amount paid out to settle past-due accounts, we do not understand it to be claimed that any swelling of the assets resulted. As to the amounts expended for labor and material, and which became embodied in drills, cultivators, etc., we have only surmise as to whether these articles were on hand February 11th. It is rather improbable that all of them would have been sold and the proceeds used up in paying debts or expenses; but it is equally probable that between October and February a part of them would have been thus eliminated. It is thus apparent that the presence of any of the trust fund in original or substituted form, in the property coming to the receiver on February 11th, rests on mere probability, and the presence of any particular or specific amount has not even so much support. A lien by substitution cannot rest on such a state of facts.

We are asked to apply to the facts of this case the rule of Smith v. Au Gres Township, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876. We think, rather, that its facts classify this case with Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100. In the Au Gres Case, it appeared that more than half of the stated value of the stock of goods had been purchased with the

funds embezzled from the township, and it was held that the stock was to be considered as a unit, the substantial identity of which was not changed by sales and additions, probably comparatively trifling. If, in the present case, it had appeared, by direct proof or by fair inference, that the mass of manufactured goods and accounts receivable coming to the receiver was larger by the amount in question than the same mass was on the preceding October, a case would have been presented within the principle of the Au Gres Case. There it was found as a fact by the trial court, and was seemingly the only reasonable inference from the testimony, that the stock of goods had been increased substantially to the same extent as the amount of the township funds employed.

The deficiency in intervener's proofs is not aided by the presumption which might arise if the reception of the trust fund and the following transfer to a receiver were close together, as in Smith v. Mottley, 150 Fed. 266, 80 C. C. A. 154; nor is the case one which was heard below on any misapprehension of the real issue, so that opportunity should be given for further proofs, as in Erie R. R. Co. v. Dial, 140 Fed. 689, 72 C. C. A. 183.

The order of the Circuit Court will be affirmed, with costs.