# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 20, 2007**

Charles R. Fulbruge III
Clerk

No. 05-51626

In the matter of: GARY L BRADLEY

       Debtor

------------------------

GARY L BRADLEY

       Appellee-Cross-Appellant

   v.

RONALD E INGALLS, Trustee;

       Appellant-Cross-Appellee

   v.

THOMAS THOMPSON, Trustee of and on Behalf of the Lazarus
Exempt Trust

       Appellee-Cross-Appellant

_____

Consolidated with 06-50808

In The Matter Of: GARY L BRADLEY

       Debtor

------------------------

RONALD INGALLS

      Appellant

  v.

LAZARUS INVESTMENTS LP; CASTLE REALTY MANAGEMENT LLC; THOMAS THOMPSON, in his capacity as Trustee of the Lazarus Exempt Trust

      Appellees

---

Appeals from the United States District Court
for the Western District of Texas

---

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Our main concern in this bankruptcy appeal is whether the burdens and elements of proof were correctly applied in a bankruptcy trustee's action to trace and recover assets that a debtor "self-settled" into a spendthrift trust of which he is the beneficiary. The bankruptcy and district courts held that, although the debtor and his business associates used the trust in a scheme to defraud his creditors, the trust could not be declared a sham because under Texas law the doctrine of sham or illusory trust applies only in marital litigation. Instead, those courts held that the bankruptcy trustee, in order to pursue the remedy of tracing assets from the debtor into the hands of the spendthrift trust trustee and recovering those assets for the bankruptcy estate, had the burden of proving that those assets were identical with the debtor's former property, that they were

2

products of such property, or that they had been commingled with other assets of the spendthrift trust. Those courts further concluded that the bankruptcy trustee carried his burden with respect to certain assets of the debtor but failed with respect to others. Accordingly, they held that only the specific assets in the hands of the spendthrift trust trustee that the bankruptcy trustee successfully traced and proved to be identical with former property of the debtor would be included in the bankruptcy estate. Finally, both courts agreed that Bradley should not be granted a discharge from bankruptcy because of his concealment of the self-settled assets. We affirm the judgments of the bankruptcy and district courts for the reasons hereinafter assigned.

## I. BACKGROUND

Gary L. Bradley was a major real estate developer in Austin, Texas who maintained a business partnership with James Gressett for a number of years. Bradley and Gressett had a private, unrecorded agreement with respect to assets and legal entities they owned or controlled. Bradley's share consisted of 80% of the real estate holdings and 20% of the non-real estate investments; Gressett's share consisted of 20% of the real estate holdings and 80% of the non-real estate investments. Bradley consistently avoided holding real estate and other assets in his own name. As a result, his actual interests in various assets and entities were ostensibly owned by Gressett and others.

In the mid-1980's, the FDIC obtained a judgment for over $50 million against Bradley, Gressett, and their large real estate development company, Circle C Development Corp. Gressett filed for Chapter 7 bankruptcy protection in the early 1990's and received a discharge. In 1999, Bradley and Gressett decided to separate their business interests by dividing, transforming, and transferring assets representing Bradley's share into a trust to be formed for the purpose of protecting his assets from creditors. Bradley Beutel, Bradley's cousin

and close business associate, was chosen to identify, reconfigure, and transfer assets of values equivalent to Bradley's share into the trust.

On May 2, 2000, Kaye Bradley Hulse, Bradley's sister, created the Lazarus Exempt Trust (the "Trust"), which the bankruptcy court described as a discretionary Crummey trust, designating her brother, Bradley, as the primary beneficiary. Hulse also designated Bradley's son as the secondary beneficiary and Beutel as the trustee. In creating the Trust, Hulse referred to herself as its settlor and funded it with a $1,000 donation. She made no other donations to the Trust, although she did loan substantial amounts of money to Bradley who in turn loaned them to the Trust or to entities owned by the Trust. Prior to trial, all claims against Hulse were dismissed.

Although the bankruptcy court did not find that Hulse created the Trust for fraudulent purposes, it found that "Bradley and Gressett used the creation of the Trust by her for their own purposes, i.e., as the timely and appropriate vehicle to accomplish the final separation of their business affairs." In fact, the bankruptcy court stated:

> For those of us looking in, this is an incredibly fraudulent scheme engaged in primarily by Bradley, Gressett and, with the Trust's formation, Beutel as well, to hide the assets Bradley owned, to place them into the Trust when formed, and to preserve them from the clutches of Bradley's creditors, the FDIC and the IRS.

Furthermore, the bankruptcy court found as a fact that "the Trust was merely a sham and/or illusory and that all the Trust assets should be deemed assets of Bradley's Chapter 7 bankruptcy estate." But the court refused to declare the Trust a sham as a matter of law because "such cause of action [i.e., to legally declare a trust to be a sham or illusion,] only exists under Texas law with regard to marital relationships." Nevertheless, the bankruptcy court, for purposes of appeal, in case the reviewing appellate court should determine such a cause of action to exist, also found as additional supporting facts that: The

4

Trust was funded with only $1,000 and the settlor made no further donations to the Trust. The great majority of the assets the Trust acquired in the first two years -- over $40 million in value -- appeared either to have been owned by Bradley or held for him by Gressett and others prior to the Trust's creation. Beutel, as trustee, never made formal distributions from the Trust, but Bradley obtained cash from the Trust any time he needed it. Bradley was employed by entities owned by the Trust and was paid a salary of about $15,000 per month. Cash was shifted between the Trust and its various entities on an "as needed" basis. Bradley was significantly involved in the management of the Trust's affairs on a daily basis. Gressett, Bradley, and Beutel conducted their business ventures out of the same office, often using a common business name, employees of the Trust-owned entities, and a centralized record-keeping system. The Trust's cash was disbursed to Bradley and others on an "as needed" basis without respect to who produced it, which is precisely how the Bradley-Gressett entities operated before they were placed in the Trust. Finally, there was continual backdating of documents in an effort to breathe legitimacy into the transactions amongst and between the Trust, Bradley, and his associates.

On July 19, 2002, Bradley filed for Chapter 7 bankruptcy. Ronald Ingalls was appointed to serve as bankruptcy trustee. This appeal arises out of three separate but related adversary proceedings, all of which were consolidated to address the issue of whether Bradley self-settled some or all of the Trust assets in an alleged effort to conceal those assets from the bankruptcy estate. A trial was held on April 19 through April 29, 2004.

On October 28, 2004, the bankruptcy court concluded that (1) certain Trust assets were self-settled and thus, are to be turned over to Ingalls as property of the bankruptcy estate, (2) other Trust assets may have been self-settled but Ingalls (a) did not carry his burden of tracing these transfers from Bradley to assets in the Trust and (b) did not timely and diligently pursue his other

available remedies with respect to those assets; and (3) Bradley's use of the Trust to conceal the self-settled assets constituted a continuing concealment warranting denial of his discharge from bankruptcy under 11 U.S.C. § 727(a)(2)(A). Ingalls, Bradley, and Beutel, as trustee of the Trust, each filed a timely notice of appeal.

On August 30, 2005, the district court affirmed. Ingalls, Bradley, and Thomas Thompson, who replaced Beutel as trustee of the Trust, each filed a timely notice of appeal.

## II. STANDARD OF REVIEW

We review the bankruptcy court's decision under the same standards used by the district court: conclusions of law and mixed law and fact questions are reviewed de novo, while findings of fact are reviewed for clear error. See Plunk v. Yaquinto (In re Plunk), 481 F.3d 302, 305 (5th Cir. 2007); EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.), 430 F.3d 260, 265 (5th Cir. 2005).

## III. DISCUSSION

Under 11 U.S.C. § 541 of the Bankruptcy Code, a bankruptcy estate is created at the commencement of the bankruptcy case. The bankruptcy estate includes, with some exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). One exception is the "spendthrift trust" exception. "In general, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors." In the Matter of Shearn Moody, Jr. (In re Moody), 837 F.2d 719, 723 (5th Cir. 1988). Pursuant to § 541(c)(2), the property of a spendthrift trust is excluded from the bankruptcy estate if those assets are protected from the beneficiary's creditors under state law. Shurley v. Texas Commerce Bank-Austin, N.A. (In re Shurley), 115 F.3d 333, 336-37 (5th Cir. 1997). Under Texas

law, which is applicable to this case, a spendthrift provision in a trust protects trust property from the beneficiary's creditors unless "the settlor is also a beneficiary of the trust." TEX. PROP. CODE § 112.035(d); see also Shurley, 115 F.3d at 337-38. This rule is known as the "self-settlor" rule." As this court has recognized, the rationale behind the rule is obvious: "a debtor should not be able to escape claims of his creditors by himself setting up a spendthrift trust and naming himself as beneficiary." Shurley, 115 F.3d at 337.

## A. Issues Raised and Argued by Ingalls

### 1. Illusory or Sham Trust

Ingalls argues that the bankruptcy and district courts erred because they stopped short of declaring that the Trust is a sham or illusory trust and that the Trust property is totally included in the bankruptcy estate. We disagree.[1] In Westerfeld v. Huckaby, 462 S.W.2d 324, 326 (Tex. Civ. App. 1970), the court stated that "[t]he doctrine of illusory trusts in its inception and in its application applies only to marital property situations." On appeal, the Texas Supreme Court affirmed, holding that "the court of civil appeals correctly held that an application of the illusory trust doctrine, as enunciated in Land v. Marshall, 426 S.W.2d 841 (Tex. 1968), is limited to instances in which a non-consenting spouse's property is used to fund a trust." Westerfeld v. Huckaby, 474 S.W.2d 189, 192 (Tex. 1971). To date, the Texas courts have not expanded the doctrine

---

[1] The district court did not reach the merits of this issue, instead ruling that the issue had been waived. We disagree. Although the bankruptcy court dismissed the illusory trust claim earlier in the litigation, it nonetheless ruled in the underlying opinion that Ingalls was not entitled to any other remedy because an illusory trust claim "only exists under Texas law with regard to marital relationships." On appeal to the district court, Ingalls raised the following issue: "The Bankruptcy Court, upon finding the Trust to be a 'sham' or 'illusory,' erred by not holding that the entire Trust corpus belongs to the Debtor's bankruptcy estate." On appeal to this court, Ingalls again raises the same issue. Thus, we conclude that the issue has been sufficiently preserved throughout this litigation and that the district court abused its discretion in concluding otherwise. See Zer-Ilan v. Frankford (In re CPDC Inc.), 221 F.3d 693, 698 (5th Cir. 2000) ("We review actions taken by the district court in its appellate role for an abuse of discretion.").

beyond the marital property context. Accordingly, the bankruptcy court did not err in concluding that the illusory trust doctrine is so limited under Texas law and therefore is not available in this non-marital case.

### 2. Elements and Burden of Proof in Tracing and Recovering Self-Settled Property

Ingalls argues that the bankruptcy court erred in assigning him the burden of following, tracing, and showing that property formerly owned by Bradley was identical to property held in the Trust, rather than placing a reverse burden on Bradley or Beutel, sub. nom. Thompson, to demonstrate that the Trust property was not self-settled. Alternatively, he argues that he met his burden of proving that substantially all of the Trust property was self-settled by either having traced that property to identical property held in the Trust or by having traced it to property with which it had become commingled or by some other methodology.

Although the elements and burden of proof issues with respect to self-settled property appear to be res nova in Texas,[2] the parties suggest, and we agree, that the situation here is analogous to that in which the beneficiary of a trust is given the remedy of tracing and recovering trust assets that have been wrongfully diverted or misappropriated by the trustee.

---

[2] In Shurley, this court left as open the elements and the burden of proof issues with respect to self-settled assets claims. 115 F.3d at 338 n.14. Specifically, this court stated:

> We note that the Marfa ranch was still held by the trust when Shurley commenced her bankruptcy case. If the ranch had been sold, prior to the bankruptcy filing, this case would be more complicated. We would still hold that some portion of Shurley's interest in the trust was self-settled and therefore property of the estate, but would have to engage in a further analysis of (1) how to value the self-settled portion of the trust, through tracing of assets or some other method of calculating Shurley's proportionate contribution to the trust relative to the other settlors' contributions, and (2) who should have the burden of proof on this issue.

Id.

In general, the initial burden of tracing and identifying property is upon the claimant who seeks to follow it into the hands of another. Schuyler v. Littlefield, 232 U.S. 707 (1914).[3] In the case of diversion or misappropriation by a trustee, the beneficiary may follow and recover the trust corpus if any property in the hands of the trustee can be traced and identified as the original property of the beneficiary. Under Texas law:

> Before a beneficiary can claim specific property in the enforcement of a trust, however, he or she must show that it is identical with his or her or the trust's property, that it is the fruit or product of such property, or that the property has been commingled with the fund against which the beneficiary asserts the trust.

72 TEX. JUR. TRUSTS 3RD § 210 (2007) (footnotes omitted citing Continental Nat'l Bank v. Weems, 6 S.W. 802, 806 (1888); Walter E. Heller & Co. v. Barnes, 412 S.W.2d 747, 759 (Tex. Civ. App. 1967); Brooks v. Cherry, 298 S.W. 170, 175 (Tex. Civ. App. 1927); Blumenthal v. Nussbaum, 195 S.W. 275, 282 (Tex. Civ. App. 1917)).

Applying the foregoing principles by analogy, we conclude that the bankruptcy court correctly used them in the present case and did not commit clear error in its factual findings. After considering voluminous documentary evidence and the testimony and depositions of Bradley, Gressett, Beutel, and many other witnesses, the bankruptcy court found that Ingalls had traced and proven that a number of assets had been transferred from Bradley to the spendthrift Trust that were identical to assets still in the hands of the Trust trustee. Although we will not attempt to completely itemize those assets, the

---

[3] See In re Lehigh & N. E. R. Co., 657 F.2d 570, 579 (3d Cir. 1981) ("where it is alleged that [trust] property has been converted into other property in the hands of the bankrupt, the claimant has the burden of tracing the trust property thereon."); Sonnenschein v. Reliance Ins. Co., 353 F.2d 935, 937 (2d Cir. 1965) (same); see also Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 436 (5th Cir. 1994) (the burden of identifying or tracing trust property rests with the claimant).

bankruptcy court found that they included the Phoenix Holdings, which included the Spillar and Pfluger tracts or ranches, the Yates property, the Lazarus Investments assets, and certain notes receivable. On the other hand, the bankruptcy court found that, although Ingalls had traced other assets from Bradley to the Trust, he had failed to show that those identical assets or products of those assets were still in the Trust; or that they had become commingled with Trust assets. Those assets included the Streetman stock proceeds, the Webb/Troup acreage, the proceeds from the Thompson Medtech transaction, and the funds received from the sale of the Rasaca Austin, L. P., partnership interest.

Ingalls' argument that he adequately traced all of the alleged self-settled assets from Bradley to identical assets or products of those assets, or to commingled assets, still in the Trust, is without merit. His arguments are not supported by the record and, for the most part, are based on a misunderstanding of the burden of proof he was required to satisfy. The burden of proving that assets went into the Trust and remained there is upon the claimant seeking to apply the remedy of tracing. See BOGERT'S TRUSTS AND TRUSTEES, § 923, at 449 n.1 (citing Schuyler, 232 U.S. at 707; Sims v. Favey, 234 S.W.2d 465, 470-71 (Tex. Civ. App. 1950); Andrews v. Estate of Andrews, 326 S.W.2d 203, 207 (Tex. Civ. App. 1959)). The remedy of tracing is not available where the claimant merely shows the receipt of trust property by the defendant and makes no case as to its subsequent history or its existence among the present assets of the defendant, nor when trust property has been disposed of in such a way as to leave no product. See BOGERT'S TRUSTS AND TRUSTEES, § 921, 433-34, nn.13-14 (citing Adams v. Champion, 294 U.S. 231 (1935); In re United Cigar Stores of America, 70 F.2d 313, 316 (2d Cir. 1934)). It is simply not enough that the property claimed may have been the product of trust funds at one time. Id. at

434 n.15 (citing Bettendorf Metal Wheel Co. V. P.P. Mast & Co., 187 F. 590, 591-92 (6th Cir. 1911)).

Ingalls is correct that in some instances the tracing burden shifts when the trustee wrongfully commingles assets with his own. See, e.g., Eaton v. Husted, 172 S.W.2d 493, 497 (Tex. 1943); Logan v. Logan, 156 S.W.2d 507, 510 (Tex. 1941); Peirce v. Sheldon Petroleum Co., 589 S.W.2d 849, 853 (Tex. Civ. App. 1979); Gen. Ass'n of Davidian Seventh Day Adventists, Inc. v. Gen. Ass'n of Davidian Seventh Day Adventists, 410 S.W.2d 256, 259 (Tex. Civ. App. 1966). In general, when a trustee wrongfully mixes trust funds of an indeterminable amount with his or her own private funds, the burden is on the trustee to distinguish his or her funds and the amount thereof from those of the beneficiary, and if the trustee cannot do so, the whole commingled fund or the property purchased with that fund becomes subject to a trust in favor of the beneficiary. Logan, 156 S.W.2d at 510-11; Peirce, 589 S.W.2d at 853. In the present case, however, Ingalls has not demonstrated that any of Bradley's assets traceable to the Trust were mixed, interspersed, or integrated with the trustee's private assets or other assets still in the Trust. The mere fact that Ingalls traced specific self-settled assets to the Trust is insufficient to show commingling so long as the assets traced to the Trust retained their individual integrity.[4] See Wichita Royalty Co. v. City Nat. Bank of Wichita Falls, 89 S.W.2d 394, 401 (1935); Commercial State Bank v. Algeo, 331 S.W.2d 84, 86 (Tex. Civ. App. 1959); Farrow v. Farrow, 238 S.W.2d 255, 256 (Tex. Civ. App. 1951).

---

[4] Undisputedly, Ingalls had access to all Trust records generated since the inception of the Trust. Thus, he has not established that there were any facts unavailable to him for purposes of showing commingling. To the extent that any Trust assets were disposed of pre-petition and incapable of being traced, Ingalls was not diligent in utilizing any of the remedies available to him to retrieve those assets. Indeed, Ingalls could have easily sought to avoid any pre-petition transfers that he believed were fraudulently conveyed and recover the property or value thereof. See 11 U.S.C. §§ 548, 550; see also TEX. BUS. & COM. CODE § 24.001, et seq. He did not do so.

Ingalls further argues that the bankruptcy court erred in rejecting his use of the proportionate contribution method for calculating the self-settled portion of the Trust.[5] We conclude, however, that Ingalls failed to prove the facts necessary to show the value of the self-settled assets in comparison to the entire Trust corpus at the time they first entered the Trust, rendering the proportionate contribution method functionally impossible to calculate. As the bankruptcy court correctly recognized, the complexity of the many transactions in this case "make this an exercise impossible to conduct based on the record established." After thoroughly examining the record, we agree that the bankruptcy court did not err by refusing to apply the proportionate contribution method because the evidence prevented the accurate and effective valuation of Trust assets under that method.

Accordingly, we agree with the bankruptcy court's conclusion that Ingalls carried his burden of tracing and identifying some but not all of the Trust assets as having been self-settled by Bradley.

### 3. Constructive Trust

Finally, Ingalls argues that the bankruptcy court erred in failing to impose a constructive trust on virtually all of the Trust assets as having been self-settled as of the petition date. We affirm the judgment of the bankruptcy court

---

[5] Under the proportionate contribution standard, the self-settled portion of the Trust is calculated relative to the non-settled portion. As the bankruptcy court explained in further detail:

> The proportion method would require us to calculate the value of the self-settled portion of the trust as of each "self-settlement" vis-a-vis the value of the total Trust and make the appropriate adjustment at each self-settlement. Then regardless of whether the trust rises or falls in value, the self-settled proportion remains constant [until the next-successive self-settlement]. That value would then represent the amount available to creditors as of the date of the bankruptcy.

Bradley v. Ingalls (In re Bradley), No. 02-12741, slip. op. at 130 (Bankr. W.D. Tex. filed Sept. 28, 2004)

in rejecting this theory because the record is devoid of proper pleadings and proof in support of Ingall's claim for a constructive trust.

The imposition of a constructive trust is generally governed by state law. Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1118 (5th Cir. 1995). Under Texas law, a constructive trust is an equitable remedy that the courts may impose when "the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." Omohundro v. Matthews, 341 S.W.2d 401, 405 (Tex. 1960). Imposition of a constructive trust is appropriate when the claimant establishes that (1) the debtor has committed actual fraud or has committed constructive fraud through the breach of a preexisting fiduciary or confidential relationship, (2) the debtor would be unjustly enriched by retaining the proceeds of the wrong, and (3) there is a traceable res upon which to impress the trust. See Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 437 (5th Cir. 1994) (applying Texas law); see also Meadows v. Bierschwale, 516 S.W.2d 125, 128-29 (Tex. 1974); In re Monnig's Dep't Stores, Inc., 929 F.2d 197, 201 (5th Cir. 1991) (citing Talley v. Howsley, 176 S.W.2d 158, 160 (Tex. 1943)).

Ingalls did not timely and properly plead or attempt to plead fraud, which is an essential element of a claim for a constructive trust. On January 12 and 26, 2004, the bankruptcy court entered orders effectively defining the main core issue for trial: whether and to what extent the Trust is self-settled or partially self-settled by the beneficiary, Bradley. Ingalls did not seek to add a fraud-based claim, along with other claims and parties, until March 3, 2004, approximately six weeks before trial. The bankruptcy court denied the motion to amend because adding these new causes of action at such a late date would have been unduly burdensome to the defendants who had prepared for a year and a half to try the matter only with respect to the issue of self-settlement. The court also doubted that plaintiffs would be prepared to try this case under these new

13

theories on a timely basis. In denying the motion, the bankruptcy court noted that Ingalls had filed three previous amended complaints over the period of a year without seeking to rely on a fraud-based constructive trust remedy. The court further noted that while the IRS was a party to this action, it had pleaded in its April, 2003 answer, alter-ego and fraudulent conveyance claims with respect to certain assets acquired by the Trust. The court dismissed these claims ruling that only the bankruptcy trustee had standing to pursue them on behalf of the bankruptcy estate. Thus, the bankruptcy court suggested that Ingalls was thereby given clear notice that he needed to amend his pleadings promptly if he wished to assert fraud and constructive trust claims in addition to his self-settlement claim. Consequently, until shortly before trial, Ingalls led the court and the other parties to believe that he would rely only on the self-settlement claim. Given these circumstances, we conclude that the bankruptcy court did not abuse its discretion in denying Ingalls' motion to add pleadings of fraud-based constructive trust claims. See Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004) (motion for leave to amend reviewed for abuse of discretion).

Moreover, as we noted above in discussing the elements and burden of proof of self-settlement claims, Ingalls did not satisfy his burden of tracing the res of Bradley's assets to property in the hands of the Trust trustee or in showing that Bradley's assets had been commingled with Trust property. As these elements are essential to proof of entitlement to the constructive trust remedy under Texas law, Ingalls' argument is without merit for this reason as well.

### C. Issues Raised and Argued by Thompson

#### 1. Wavier

Thompson argues that the bankruptcy court erred in finding that Bradley was a self-settlor under Texas law because Hulse created the Trust. However, Thompson never raised this issue in the district court. Even if an issue is raised

14

and considered in the bankruptcy court, this court will deem the issue waived if the party seeking review failed to raise it in the district court. See Rush Truck Ctrs. of Tex. L.P. v. Bouchie (In re Bouchie), 324 F.3d 780, 782 n.6 (5th Cir. 2003); United States v. Olson, 4 F.3d 562, 567 (8th Cir. 1993). Only in exceptional circumstances, when addressing an issue in the interest of justice, will this court address an issue that has been waived. Kinash v. Callahan, 129 F.3d 736, 739 n.10 (5th Cir. 1997); see also Bayou Liberty Ass'n v. United States Army Corps of Eng'rs, 217 F.3d 393, 398 (5th Cir. 2000) ("We do not consider issues raised for the first time on appeal except in extraordinary instances when such consideration is required to avoid a miscarriage of justice . . . ."). Because this issue was clearly raised in the bankruptcy court, Thompson certainly had ample opportunity to raise it in the district court for consideration. Because Thompson failed to do so, and in the absence of any perceived miscarriage of justice, we deem the issue waived. Id. (refusing to address issue when party had ample opportunity to raise the issue in the district court).

## 2. Alter Ego

Thompson next argues that the bankruptcy court erred in finding that certain assets conveyed to Lazarus Investments, a partnership wholly owned by the Trust, could not be considered self-settled because they were not conveyed directly to the Trust itself. The previous courts rejected this argument as "simply ridiculous." Thompson contends that the argument is not ridiculous because Ingalls failed to allege or prove an alter-ego claim, implying that the Trust and Lazarus Investments are separate legal entities and that piercing of the separate entity privilege is necessary to put the conveyed assets in the hands of the Trust's trustee. We disagree. Logically and legally, the conveyed assets are in the hands of the trustee just as much as any asset or entity to which he holds legal title. Thompson has the plenary right as trustee to control and use

Lazarus Investments, as well as its assets, in the best interest of the Trust and its corpus.

Moreover, under Texas law, a trust is not considered a legal entity in at least two important respects. For purposes of attorney-client privilege or legal capacity to be sued, "[t]he term 'trust' refers not to a separate legal entity but rather to the fiduciary relationship governing the trustee with respect to the trust property." Ray Malooly Trust v. Juhl, 186 S.W.3d 568, 570 (Tex. 2006) (citing Huie v. DeShazo, 922 S.W.2d 920, 926 (Tex. 1996)). Accordingly, in Malooly, the Texas Supreme Court held that suits against a trust must be brought against its legal representative, the trustee, and not against the trust itself as a separate legal entity. 186 S.W.3d 569-71. In Huie, the Texas Supreme Court held that the attorney-client privilege protects communications between a trustee and his or her attorney relating to trust administration for the same reason that a trust is not a separate legal entity; it is a fiduciary relationship. 922 S.W.2d at 925-26 (citing Tex. Prop. Code § 111.004). "[The attorney] thus represented [the trustee] in his capacity as trustee, not the 'trust' as an entity." Id. We see no good reason to expect the Texas courts to deviate from these decisions to hold that a trust is a separate legal entity for purposes of requiring a bankruptcy trustee to plead and prove an alter-ego claim to reach self-settled assets held by an entity wholly-owned by a spendthrift trust.

### 3. Self-Settled Assets; Factual Findings

Finally, Thompson challenges the bankruptcy court's findings of fact with respect to whether Phoenix Holdings, Ltd., Phoenix Holdings GP, Inc., and two pieces of real property known as Spillar/Pfluger and the Yates Property were

self-settled.[6]  However, his arguments simply boil down to questions of witness credibility and the bankruptcy court's weighing of the evidence.  "We are particularly mindful of the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Young v. Nat'l Union Fire Ins. Co. (In re Young), 995 F.2d 547, 548 (5th Cir. 1993) (internal quotations and citations omitted).  Moreover, when the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if we would have weighed the evidence differently.  As the Supreme Court stated, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."  Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985); Plunk, 481 F.3d at 305 (bankruptcy court's findings of fact reviewed for clear error).  Having reviewed the record in its entirety, we are unable to conclude that the bankruptcy court clearly erred in finding that the aforementioned assets of the Trust were self-settled.

## D. Issue Raised and Argued by Bradley

Bradley argues that the bankruptcy court erred in failing to discharge him from bankruptcy.[7]  Under 11 U.S.C. § 727(a)(2)(A), the bankruptcy court can deny discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition."  Thus, "[i]n order to deny discharge, the statute requires that four elements be proven: (1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate."  Pavy v. Chastant (In re Chastant), 873 F.2d

---

[6] These issues were also raised and argued by Bradley.

[7] Findings of fact in support of a discharge decision are reviewed for clear error while the decision itself is reviewed de novo.  U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt), 348 F.3d 89, 91 (5th Cir. 2003).

89, 90 (5th Cir. 1989). Concealment of property can be established by showing "a transfer of title coupled with the retention of the benefits of ownership." Thibodeaux v. Olivier (In re Olivier), 819 F.2d 550, 553 (5th Cir. 1987). In addition, this court has held that, under the continued concealment doctrine, "the concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy." Id. at 555. Having reviewed the record, we agree that the bankruptcy court did not clearly err in finding that Bradley transferred assets to the Trust within one year of the bankruptcy petition and maintained and concealed his secret ownership interest in those assets with the intent to defraud his creditors. Thus, we agree that the bankruptcy court did not err in refusing to discharge Bradley from bankruptcy.

IV. CONCLUSION

For these reasons, the judgments of the bankruptcy and district courts are affirmed.

AFFIRMED.