**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2011

No. 10-50462

Lyle W. Cayce
Clerk

In the Matter of: TERRY L. HOFF; LISA W. HOFF,

Debtors

---

C. DANIEL ROBERTS, Trustee

Appellee

v.

PEGGY MCCONNELL, as Trustee of the Terry L. Hoff Heritage Trust;
TERRY L. HOFF

Appellants

---

Appeal from the United States District Court for the
Western District of Texas

---

Before SMITH, WIENER, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

In 1990, Mary McConnell ("Mary") created the Terry L. Hoff Heritage

Trust ("the Trust") inter vivos, as a spendthrift trust[1] for the sole benefit of her

grandson, Appellant Terry L. Hoff ("Hoff"), who was 22 years old at the time.

---

[1] A spendthrift trust is "[a] trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest; a trust by the terms of which a valid restraint is imposed on the voluntary or involuntary transfer of the beneficiary's interest." *Black's Law Dictionary* 1654 (9th ed. 2009).

No. 10-50462

Mary funded the Trust with $100 and designated her daughter, Appellant Peggy McConnell ("Peggy") — Hoff's mother — to serve as the sole trustee. As an exception to the Trust's spendthrift provisions, the trust agreement provides that, following the death of the "Settlor," Hoff may make withdrawals of principal in specified fractions of the value of the Trust's assets, calculated as of the dates that Hoff attained specified ages, *viz.*, one-third of the value of those assets on the date he reached 30, one-half of the value of the assets remaining on the date he reached 35, and all assets that remained when he reached 40 and from time to time thereafter.

When Hoff was 37 years old, he filed for bankruptcy protection under Chapter 7, having never made any withdrawals from the Trust under the subject provision. Appellee C. Daniel Roberts, Hoff's bankruptcy trustee ("Appellee"), sought to bring funds of the Trust into the bankruptcy estate, free of trust. Whether Hoff — and thus his bankruptcy trustee — is entitled to acquire any of the Trust's assets by virtue of its withdrawal provision depends on (1) whether the "Settlor" of the Trust is deceased, (2) if so, how old Hoff was when the Settlor died, and (3) whether, when Hoff filed for bankruptcy at age 37, he was entitled to make withdrawals from the Trust and, if so, in what amounts.

Regarding the condition that the Settlor be deceased before Hoff could make withdrawals, the parties disagree whether, in addition to Mary (who is deceased), Peggy (who is living) is also a settlor of the Trust by virtue of having contributed funds to it. We hold that she is not and that Mary was the only settlor that the Trust has ever had or will ever have. Regarding withdrawals, the parties disagree whether, when Hoff filed for bankruptcy at age 37, he had authority to withdraw assets of the Trust, specifically assets equal to one-half of the principal of the Trust, valued as of his 35th birthday. We hold that he had that authority, so that his bankruptcy trustee does too.

No. 10-50462

## I. FACTS AND PROCEEDINGS

Presumably as an accommodation to Peggy, her daughter, Mary created the Trust for the benefit of her grandson, Hoff, designating his mother, Peggy, as the sole trustee. Mary nominally funded the Trust with $100, never contributing to it thereafter. Except for Mary's original $100, all contributions to the Trust have been made by Peggy. She began contributing to the Trust about seven years after its creation. Over an eight-year period beginning in 1997, Peggy made seven contributions of $10,000, each in a different calendar year.

The provision of the trust agreement that animates this appeal states:

> Notwithstanding the previous requirements as to the term of this Trust for Terry L. Hoff, and if the Settlor of this Trust (or each Settlor if more than one) is then deceased, Terry L. Hoff will have the right to withdraw from the Trust: one-third of the value of the Trust Property at age 30; one-half of the value of the Trust Property remaining at age 35; and all of the Trust Property remaining at age 40 (or from time to time or at any time thereafter).

At oral argument on appeal, the parties agreed that Mary had died between Hoff's 30th and 35th birthdays, not before he reached age 30 as the district court had mistakenly observed. Peggy is still living. Hoff filed for bankruptcy protection while he was 37, never having made a withdrawal from the Trust under the above-quoted provision.

The trust agreement does not define "Settlor." It does, however, identify Mary (and only Mary) as "Settlor," and she is consistently referred to as such throughout. For example, the trust agreement states that "Settlor or any other person, trust, or entity may add property of any character to this Trust." Although, the Trust thus expressly contemplates that others beside Mary might *contribute* to the trust, it never refers to any putative future contributors as

3

No. 10-50462

"Settlor," instead distinguishing them ("or any other person") from Mary ("Settlor").

As Hoff's bankruptcy trustee, Appellee sought to assume a quantity of the Trust's principal equal in value to that which Hoff himself could have withdrawn at the time he filed for bankruptcy. The bankruptcy court ruled that both Mary and Peggy were settlors of the Trust based on that court's conclusion that "all persons who had contributed" to the Trust are settlors. It held, therefore, that Hoff — and thus his bankruptcy trustee — could not make a withdrawal from the Trust because Peggy, a settlor, is still living.

The district court, acting in its appellate capacity, reversed the bankruptcy court. It ruled that Mary was the Trust's one and only settlor. The district court held that, because Mary died before Hoff's 30th birthday,[2] Hoff, at age 37, was already vested with the right to withdraw assets of the Trust equal in value to Hoff's two separate vested rights: one-third of the Trust's principal valued as of the date that he had reached age 30, and one-half of the Trust's principal remaining as of the date that he had reached age 35 and valued as of that date. The district court also ruled that the "time to time" parenthetical phrase at the end of the above-quoted withdrawal provision modifies each of the three sequential withdrawal rights, not just the last one that pertains to withdrawals after reaching age 40, thereby authorizing Hoff to withdraw *on and after* the dates on which he reached the benchmark ages of 30 or 35 as well.

---

[2] As acknowledged by the parties at oral argument, this factual determination by the district court was incorrect: Mary actually died after Hoff's 30th birthday but before his 35th.

4

No. 10-50462

## II.  ANALYSIS

### A.  Standard of Review

Like the district court, we review the bankruptcy court's interpretation of the instant trust agreement de novo.[3]

### B.  Applicable Law

We interpret trust agreements as we interpret contracts.[4]  Like a contract, a trust agreement must be interpreted as a whole, with each provision given effect[5] and no single provision given controlling effect.[6]  A trust is governed "first and foremost by [its] own terms."[7]

Because any assets of the Trust that Hoff could have reached at the time he filed for bankruptcy are part of his bankruptcy estate,[8] we must determine whether Hoff's right to make withdrawals from the Trust had accrued when Hoff filed for bankruptcy, and, if so, in what amount or amounts.  Again, there are two conditions precedent to Hoff's entitlement to withdraw assets from the Trust: (1) The Settlor must have died; and (2) thereafter, Hoff must have attained the age or ages specified in the withdrawal provision of the trust agreement.

### C.  Mary was the Sole Settlor

As Mary, the only named Settlor, had died before Hoff filed for bankruptcy but Peggy was (and is) still living, Hoff would still have no right of withdrawal

---

[3] *See In re Bradley*, 501 F.3d 421, 428 (5th Cir. 2007).

[4] *See Goldin v. Bartholow*, 166 F.3d 710, 715 (5th Cir. 1999).

[5] *See Aubris Res. LP v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009).

[6] *See Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008).

[7] *Goldin*, 166 F.3d at 716.

[8] 11 U.S.C. § 541(a)(1); *id.* § 541(c)(2).

5

No. 10-50462

*if* Peggy too is a settlor. We agree with the district court that she is not. In the first sentence of the trust agreement, Mary is identified as the "Settlor." She is referred to as Settlor throughout the trust agreement, and no one else is referred to as a settlor therein. The trust agreement does not define "Settlor," and there is no provision in it that either specifies the process by which a person other than Mary could become a settlor or even that anyone besides Mary could ever become a settlor.

There are myriad places throughout the trust agreement at which its drafter could easily have specified that a post-creation contributor to the Trust would become a settlor. Yet that does not appear anywhere in the trust agreement. For example, as noted, the agreement declares that "Settlor or any other person, trust, or entity may add property of any character to this Trust." There, the trust agreement obviously contemplates that persons in addition to Mary might *contribute* to the Trust — as has Peggy — yet it refers to them only as "person[s]," never implying, much less stating, that anyone would *ipso facto* become a settlor by virtue of contributing to the Trust. Likewise, the trust agreement provides for Hoff to withdraw non-testamentary contributions "made by any person" without requiring that the Settlor has died. Again, the trust agreement gives no indication that any person who makes such an inter vivos contribution to the Trust would be deemed a settlor, referring to them merely as "person[s]." And, the trust agreement refers to non-testamentary transfers to the Trust as being "made by each contributor." If the drafter of the trust agreement and the Settlor of the Trust had intended for each such contributor to become a settlor, they could easily have stated as much in one or more of these instances or elsewhere in the agreement.

Additional light is shed on this question by the version of the Texas Property Code ("the Code") that was in effect at the time the Trust was created. At that time, the Code provided that "[i]f the provisions of this subtitle and the

6

terms of a trust conflict, the terms of the trust control . . . ."[9] The definitions in the Code, therefore, are default rules that become applicable only if the trust document is silent on the point at issue.[10] And, the Code states that its definitions are to operate only "[i]n this subtitle."[11] Thus, in the absence of controlling language in the instant trust agreement, the applicable Texas law in force when the Trust was created supplies the answer. At that time, as well as years later when Hoff filed for bankruptcy, the Code specified that "'Settlor' means the person who creates the trust."[12] The term did not include subsequent contributors in the set of "settlors."

We are aware that in its present iteration, the Code states that a "Settlor" is "a person who creates a trust or contributes property to a trustee of a trust."[13] This version of the Code was enacted after Hoff declared bankruptcy, however, and long after the Trust was created. As our inquiry concerns Mary's intent as of the time that she settled the Trust, the Code's default provision in effect at that time (and at the time Hoff filed for bankruptcy as well) supports our conclusion that, as drafted and executed, the trust agreement does not make settlors of future contributors.[14]

---

[9] Tex. Prop. Code §  111.002(a) (2004).

[10] *See Goldin*, 166 F.3d at 716.

[11] Tex. Prop. Code § 111.004 (2004).

[12] *Id.* § 111.004(14) (2004).

[13]  Tex. Prop. Code § 111.004(14) (2007).

[14] Appellants cite to cases that they contend stand for the proposition that those who contribute to a trust are settlors of that trust. *See, e.g.*, *In re Brooks*, 844 F.2d 258 (5th Cir. 1988); *Bradley*, 501 F.3d at 421. These cases are inapposite. *Brooks* involved a situation in which debtor was a member of the association that settled the trust. We determined that the trust was self-settled. *Brooks*, 844 F.2d at 262. This opinion mentioned that "[t]he person who provides the consideration for a trust is the settlor even if another person or entity nominally creates the trust," *id.* at 263, but this statement was clearly made in reference to self-settled trusts and cites Restatement (Second) of Trusts § 156, cmt. *f* (1959), which deals with such

No. 10-50462

Undeterred, Peggy and Hoff rely on the phrase, "if the Settlor of this trust (or each Settlor if more than one) is then deceased," as support for their contention that Peggy became a settlor by virtue of contributing to the Trust. This phrase, they contend, unambiguously demonstrates that the trust agreement contemplates the addition of new settlors. They advance for support the presumption that words of contracts are not to be read as meaningless, asserting that we would be reading the quoted parenthetical phrase as meaningless if there could not be "more than one" settlor.[15]

Again, we agree with the district court that this phrase does not make Peggy (or any other contributor) an additional settlor. As we have noted, the trust agreement identifies only Mary as the "Settlor"; it supplies no basis to conclude that there are, or could be, additional settlors. Whether read in a vacuum or in the context of the entire trust agreement, the referenced phrase alone is not sufficient to make settlors of future contributors. Even if, *arguendo*, it reflects the possibility of more than one settlor, it supplies no answer to how anyone besides Mary might become an additional settlor: There is no hint that contributions to the Trust could make that happen. This phrase indicates, at most, that it was likely boilerplate language inadvertently lifted (or not deleted) from some form book or previous trust agreement used by drafters from time to time in varying situations, including some in which there would be more than one settlor.[16] We cannot imagine that if Mary (or Peggy, or both) had made

situations. *Bradley* similarly was decided in the context of a self-settled trust. *See Bradley*, 501 F.3d at 428.

    The Appellants' citation to Restatement (Third) of Trusts § 58, cmt. *f* (2003), is likewise inapplicable because that section, again, deals with self-settled trusts. The far more relevant section is Restatement (Second) of Trusts § 3 (1959), which unambiguously states that "[t]he person who creates a trust is the settlor."

[15] *See, e.g.*, *Aubris Res.*, 566 F.3d at 486.

[16] This phrase tells us nothing about whether there is in fact (or might ever be) more than one settlor of this particular trust. It may well illustrate, however, the risk attendant

known to the drafter of the instant trust agreement that they wanted subsequent contributors to be settlors, the drafter would not have included an express provision to that effect. Because the instant trust agreement is reasonably read to admit only Mary as the "Settlor," Appellants' reliance on the subject phrase is ineffectual.[17]

The parties spill much ink arguing over which interpretation of the Trust better serves the purposes for which Mary created it. We see little fruit in this inquiry, both because the totality of the circumstances confirms that Mary is the sole settlor and because this line of inquiry provides no solid guidance. A driving force behind the creation of the trust was the determination by Mary (or Peggy, or both) to have the Trust's assets shielded from Hoff's creditors: She stated in the trust agreement that it should be interpreted to afford greater protection to Hoff than to his creditors. But, by diluting the otherwise solid spendthrift nature of the Trust with a detailed method by which Hoff could withdraw portions of the principal at various future times, Mary also exhibited the determination that her grandson be able to obtain some of the assets of the Trust incrementally, between ages 30 and 40, during which period she presumably anticipated (or at least hoped) that he would learn by experience to manage his own finances without risking all trust property at once. As the Appellee correctly points out, were Peggy as trustee able to add living settlors to the Trust by the simple expedient of accepting contributions from them, the withdrawal rights that Mary had intended for him to enjoy would be at risk. The trustee, whether intentionally or inadvertently, could prevent Hoff from ever

---

on the use of cut-and-paste or do-it-yourself legal forms in lieu of precisely drafted, tailor-made documents.

[17] We similarly discount the reference that the Appellants make to the single instance when the trust agreement refers to "a" settlor. Rather than indicating that the Trust contemplates more than one settlor, this only shows that this language was not as carefully tailored to the provisions of this specific trust as it might have been.

withdrawing any principal during the existence of the Trust by accepting contributions from younger persons with longer life expectancies.

The competing goals of spendthrift protection and withdrawal rights embodied in the Trust lead us to minimize the effect of this inquiry on our conclusion. In fact, we would expect Hoff to be arguing for the opposite construction of the Trust if, absent his bankruptcy filing, the trustee were to contend that he could not now draw down portions of trust principal. Appellants cannot have it both ways: Any putative ambiguity fails to cut decisively either way.

Finally, none of the parties have addressed the purpose, if any, for Mary's creating the Trust with a one-time nominal contribution instead of Peggy's doing so as the only real benefactor of the trust for her son. But, they chose to do it that way — and chose not to require Peggy's death as a condition precedent to Hoff's withdrawals. These omissions add support to our conviction that Mary is the only settlor of the Trust. In sum, we are satisfied, as a matter of law, that Mary was the sole settlor of the Trust, and that her death after Hoff attained age 30 put the Trust's remaining withdrawal provisions in play.

## D. Amounts and Timing of Hoff's Withdrawal Rights

As quoted at the outset of Section I above, the trust agreement specifies that, after the death of the Settlor, Hoff would have the right to withdraw assets from the Trust in amounts equal to one-third of the value of trust principal calculated "at age 30," one-half of the value of trust principal that remains "at age 35," and all trust property that remains "at age 40 (or from time to time or at any time thereafter)." We acknowledge the possibility of two potential ambiguities here: (1) Whether this provision specifies only the dates on which the value of the amounts that Hoff could withdraw are to be calculated or specifies both those dates *and* the times at which Hoff may make withdrawals of such amounts; and (2) whether the parenthetical phrase, "(or from time to

time or at any time thereafter),” which follows “at age 40,” applies to withdrawals authorized at each specified age or only to withdrawals authorized “at age 40.”

None disputes that the initial function of the withdrawal provision’s reference to Hoff’s ages — 30, 35, and 40 — is to fix the exact days as of which the dollar amounts that Hoff may withdraw are to be *calculated*. The prepositional phrase “of the Trust Property at age 30” (and the same phrase dealing with ages 35 and 40) modifies “value,” not “right to withdraw.” The subject provision thus dictates first the precise dates on which the value of the amount of trust assets that Hoff could withdraw are to be determined — respectively, his 30th, 35th, and 40th birthdays.

Whether a secondary function of these age references is to establish the *times* (or periods of time) at (or during which) Hoff may make withdrawals is disputed. Peggy and Hoff contend that, even if Mary is held to be the sole settlor so that her death triggered Hoff’s withdrawal rights, his bankruptcy trustee could not reach any principal of the Trust because Hoff filed for bankruptcy while he was 37, not while he was 30 or while he was 35. They reach this conclusion by interpreting the trust agreement to dictate that, following the settlor’s death, Hoff may withdraw trust assets only *at* — not *from and after* — ages 30 and 35. Although it is not clear whether Peggy and Hoff insist that he could make withdrawals (1) only on the single day that he reached age 30 and again on the single day that he reached 35 or (2) at any time during the year when he was 30 and again during the year when he was 35, it is clear that they interpret this provision to mean that Hoff could not make any withdrawals during the year following his 37th birthday (or while he is or was 31, 32, 33, 34, 36, 37, 38, or 39). This reading is unreasonably strained if not patently absurd.

Just because this “snap shot” reference to Hoff’s ages determines the precise days as of which the *value* of the amounts he may withdraw are to be

11

calculated, it does not follow that it is also a "snap shot" restriction on when he may *make* withdrawals, *i.e.*, only on his 30th and 35th birthdays or only during the 365-day periods while he is 30 and 35. The age references do not modify the rights to withdraw, which have no temporal limitation. The only reasonable reading of this provision is that, (1) after the death of the settlor and (2) after the value of withdrawable trust assets is calculated — first as of his 30th birthday and again as of his 35th birthday — Hoff could withdraw funds totaling those amounts *and* he could do so, either in a single lump sum or in lesser amounts seriatim, at any time and from time to time after the specified birthdays, so long as the total of all withdrawals during those five-year spans never exceed those values in the aggregate. It follows that, given only this one *reasonable* interpretation, the provision is not ambiguous.

Not to be dissuaded, however, the Appellants advance an alternative argument in support of the contention that Hoff cannot make withdrawals except precisely "at age 30" and "at age 35." They do so on the shoulders of the parenthetical phrase, "(or from time to time or at any time thereafter)," and its location immediately following "at age 40" in the Trust's withdrawal provision. Relying on the last-antecedent rule,[18] they insist that this timing phrase only modifies Hoff's withdrawal right *at age 40* but does not permit him (and thus Appellee) to make withdrawals "at any time and from time to time" after attaining the ages of 30 or 35.

We do not rely on that parenthetical provision to conclude that, following the death of the Settlor, Hoff could make withdrawals at any time or from time to time after attaining ages 30 and 35, not just "at" 30 or 35. Rather, because we see the age reference primarily as a valuation-date reference and secondarily as the *commencement date* of the periods during which withdrawals can be made,

---

[18] *See, e.g.*, *United States v. Campbell*, 49 F.3d 1079, 1086 (5th Cir. 1995).

we conclude that, once accrued, Hoff's rights to withdraw have no temporal limitations. Rights of withdrawal, once accrued, continue *ad infinitum* as to each fraction, *viz.*, one-third and one-half, as well as thereafter for all trust assets remaining from and after 40.

Moreover, even though it is not obvious from the trust agreement why, irrespective of the Trust beneficiary's age, the withdrawal rights afforded to him remain inchoate until the death of the Settlor, it is obvious from the trust agreement that the term of the trust is for the lifetime of the beneficiary, Hoff. Therefore, unless either no property were to remain in trust when Hoff reaches age 40 or he were to withdraw all of the Trust's property at that time, the Trust will continue in force and effect thereafter. Because, under either or both circumstances, (1) additional assets could be contributed to the Trust from time to time during the continuation of the Trust after Hoff's 40th birthday, and (2) any assets remaining unwithdrawn would likely produce interest, dividends, or other proceeds after his 40th birthday, some provision for Hoff's making withdrawals of such post-40 assets is needed. Otherwise, he would only be able to withdraw assets equal in value to the principal of the trust when he reached the age of 40. This parenthetical phrase is thus necessary to ensure that Hoff could withdraw post-40 accumulations.

Our belabored point is that, even if, arguendo, we were to rule that the parenthetical phrase, "from time to time or at any time thereafter," is directly applicable only to withdrawals after age 40, so as to ensure that Hoff could withdraw assets contributed or accruing to the Trust following his 40th birthday, it would not follow that such exclusive attribution to post-40 withdrawals would preclude Hoff's exercise of his age 30 and 35 withdrawal rights *from time to time or at anytime* after he attained those ages.

To summarize, regardless whether, for purposes of withdrawal, the parenthetical phrase that follows "at age 40" (1) applies only to property held in

trust at and after that age or (2) applies as well to the specified fractions of such property remaining at ages 30 and 35, nothing in the trust agreement can be tortured to prohibit Hoff's exercise of his age-35 withdrawal rights from time to time thereafter, including at and after age 37, as to trust assets aggregating one-half of the value of the Trust's property that remained as of Hoff's 35th birthday. And, because Hoff could make such withdrawals at age 37, so can his bankruptcy trustee.

## E. Quantum of Withdrawal

Finally, in the mistaken belief that Mary had died before Hoff's 30th birthday, the district court understandably held that Appellee may withdraw, for the benefit of Hoff's bankruptcy estate, trust principal in an amount comprising (1) one-third of the Trust's property valued as of Hoff's 30th birthday and (2) one-half of the Trust's property remaining on Hoff's 35th birthday, valued as of that date. All now agree, however, that Mary died *after* Hoff's 30th birthday, so the condition precedent to the accrual of his withdrawal right at age 30 never materialized. Consequently, as acknowledged at oral argument by counsel for Appellee, the only withdrawal right to which Hoff was entitled when he filed for bankruptcy at age 37 was the right to withdraw assets of the trust having an aggregate value equal to one-half of the principal of the Trust remaining on — and valued as of — Hoff's 35th birthday. Accordingly, the judgment of the district court must be amended to specify that Appellee's withdrawal be in that amount only; and we remand this case to the district court for the limited purpose of its determining such amount and entering an amended judgment which reflects that correction.

## III. CONCLUSION

We hold that: (1) Mary was the sole settlor of the Terry L. Hoff Heritage Trust; (2) Mary was living on Hoff's 30th birthday, so his withdrawal right "at age 30" never accrued; (3) Mary's death after Hoff's 30th birthday but before his

35th birthday satisfied the condition precedent to the accrual of Hoff's withdrawal right "at age 35"; (4) even though Hoff never exercised his age-35 withdrawal right before he filed for bankruptcy protection at age 37, he remained entitled to withdraw assets worth one-half of the value of all trust principal on hand, calculated as of his 35th birthday[17]; and (5) Hoff's bankruptcy trustee, Appellee herein, is therefore entitled to withdraw, for the benefit of Hoff's bankruptcy estate, trust principal with a current value equal to the value of one-half of the principal that remained in trust on Hoff's 35th birthday. We therefore affirm the judgment of the district court to the extent it reversed the bankruptcy court and authorized Appellee C. Daniel Roberts, as Hoff's bankruptcy trustee, to exercise Hoff's right to withdraw a portion of the Trust's principal. In light of (1) the district court's misunderstanding of the timing of Mary's death relative to Hoff's 30th birthday and (2) the Appellee's concession at oral argument that the amount Hoff was entitled to withdraw when he filed for bankruptcy is the amount — and only the amount — that he could have withdrawn from and after age 35, *viz.*, one-half of the value of trust principal as of that time, we must remand this case with instructions for the district court to determine the value of the Trust's assets that the trustee of the Trust must deliver to Hoff's trustee in bankruptcy, using funds of the Trust equal in value to one-half of the principal that remained in the Trust on Hoff's 35th birthday, and to amend its judgment accordingly. In remanding, this panel retains jurisdiction to receive and rule on the judgment of the district court following its amendment thereof on remand.

REMANDED with instructions for correction of the judgment and return to this panel thereafter for further disposition.

---

[17] At oral argument, counsel for Appellee conceded that such is the amount available for withdrawal.