United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 12, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 06-10426

))))))))))))))))))))))))))))

In The Matter Of: DON ROYL PLUNK

      Debtor.

------------------------

DON ROYL PLUNK,

      Appellant,

    v.

ROBERT YAQUINTO, JR. and COMERICA BANK,

      Appellees.

---

Appeal from the United States District Court
for the Northern District of Texas
No. 3:05-CV-1470

---

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Before us is an appeal by a debtor of the bankruptcy court's decision that his pension plan is not exempt under Texas law from being "property of the estate" because it was not "qualified" pursuant to 26 U.S.C. § 401(a) (2000). The debtor also appeals the bankruptcy court's decision that collateral estoppel prevented him from challenging whether a creditor owned a judgment against him. For the following reasons, we AFFIRM.

## I. BACKGROUND

On October 12, 2004, Debtor-Appellant Don Royl Plunk ("Plunk") filed for Chapter 7 bankruptcy. Plunk listed the Don R. Plunk P.S. Plan ("the Plan"), a self-administered pension plan worth $300,000, as personal property on Schedule B. Plunk then claimed the Plan as exempt property on Schedule C pursuant to section 42.0021 of the Texas Property Code. Section 42.0021 exempts a pension plan from attachment, execution, or other seizure if the plan is "qualified" under the Internal Revenue Code ("I.R.C."). TEX. PROP. CODE ANN. § 42.0021(a) (Vernon 2000 & Supp. 2006); see also 11 U.S.C. § 522(b) (incorporating state law exemptions into bankruptcy proceedings).

In early December 2004, Appellees Robert Yaquinto, Jr. ("the Trustee") and Comerica Bank ("Comerica") (collectively, "Appellees") filed objections to Plunk's claim that the Plan was exempt. Appellees argued that Plunk had abused Plan assets and, thus, the Plan was no longer qualified under I.R.C. § 401(a), 26 U.S.C. § 401(a), and could not be exempted in the bankruptcy proceeding.

Later that month, Comerica filed a motion to lift the automatic bankruptcy stay to permit Comerica to proceed in a garnishment case in the 193rd Judicial District Court of Dallas County, Texas, styled Comerica Bank-Texas, N.A. v. Neighborhood Credit Union and Don R. Plunk, No. 02-10675-1 ("the state

2

garnishment action"). Comerica claimed to own, as the successor to a series of mergers, a judgment of over $750,000 ("the judgment") against Plunk that was originally awarded to BancTexas Dallas, N.A. ("BancTexas") in 1989. In the state garnishment action, Comerica was attempting to garnish a bank account held by the Plan in order to collect on the judgment. As in the bankruptcy case, Comerica argued that the Plan was not qualified under I.R.C. § 401(a) and, thus, was not exempt from garnishment. At the time Plunk declared bankruptcy, which stayed the garnishment action, the state court had already held a number of hearings and was on the verge of trial. Comerica, therefore, asked that the stay be lifted so that the state court could make a final determination about the qualified status of the Plan.

The bankruptcy court held a hearing on these issues over a period of days between February 2005 and April 2005. At the hearing, Plunk put on evidence that the Internal Revenue Service ("IRS") had determined that the Plan was structurally qualified under § 401(a) when the Plan was created. In response, Appellees did not argue that the Plan was not qualified structurally, but contended instead that Plunk had misused Plan assets to the extent that the Plan was no longer qualified operationally.

With respect to the motion to lift the stay, Comerica offered evidence that the judgment owned by BancTexas was transferred to Hibernia National Bank of Texas ("Hibernia") by the Federal Deposit Insurance Corporation as the receiver for

3

BancTexas in 1990.  Subsequently, Hibernia merged into Comerica. Plunk disputed that Comerica owned the judgment and argued there was an insufficient chain of title between Hibernia and BancTexas.  Comerica then put on evidence that in 1992, Hibernia relied on the judgment to bring a garnishment action against some of Plunk's assets ("the 1992 garnishment action").  Plunk responded to the 1992 garnishment action, but did not contest Hibernia's ownership of the judgment.  Therefore, Comerica argued that the principles of res judicata and collateral estoppel prevented Plunk from contesting Hibernia's ownership of the judgment in the current proceedings.

On April 15, 2005, the bankruptcy court entered an order sustaining Appellees' objections to Plunk's claim that the Plan was exempt.  The bankruptcy court determined that Plunk had used Plan assets to pay personal bills and that the Plan was no longer qualified.  The bankruptcy court also lifted the stay on May 10, 2005, to permit the state court garnishment action to proceed. In making its decision to lift the stay, the bankruptcy court ruled that collateral estoppel and res judicata precluded Plunk from arguing that Hibernia, and thus Comerica, did not own the judgment at issue.

Plunk appealed both rulings to the district court.  The district court affirmed the bankruptcy court's decisions, and Plunk now appeals to this court.  On appeal, Plunk contends that this court's precedent in <u>Youngblood v. Federal Deposit Insurance</u>

Corp. (In re Youngblood), 29 F.3d 225 (5th Cir. 1994), prevents the bankruptcy court from making an independent determination of whether the Plan was qualified and that res judicata and collateral estoppel do not bar his claim that Comerica does not own the judgment.  We have jurisdiction to consider Plunk's appeal pursuant to 28 U.S.C. § 158(d), and now turn to the merits of the parties' arguments.

## II. STANDARD OF REVIEW

This court applies the same standard of review to the decisions of a bankruptcy court as does the district court. Nesco Acceptance Corp. v. Jay (In re Jay), 432 F.3d 323, 325 (5th Cir. 2005).  Findings of fact are reviewed for clear error, while conclusions of law are considered de novo.  Id.; see also FED. R. BANKR. P. 8013.  We may affirm on any grounds supported by the record, even if those grounds were not relied upon by the lower courts.  Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.), 440 F.3d 238, 245 (5th Cir. 2006).

## III. DISCUSSION

A.  Whether the Plan is Qualified

We will first consider Plunk's appeal regarding the decision that the Plan was not qualified.  Plunk does not argue that the bankruptcy court erroneously found that he had abused the Plan's assets and that such abuse warranted disqualification.  Instead, Plunk argues that the bankruptcy court was required by this

5

court's precedent in Youngblood to defer to the initial IRS determination that the Plan was qualified. Consequently, resolution of this case requires an analysis of our decision in Youngblood.

In Youngblood, Youngblood Builders, Inc., created a defined-benefit pension trust for its employees. 29 F.3d at 226. The IRS issued favorable determination letters that the plan was "qualified" under § 401(a) in 1978 and 1987. Id. In December 1987, the plan was terminated and William Youngblood, a beneficiary of the plan, had his distribution rolled over into an IRA. Id. Around that same time, the IRS audited the plan. Id. at 227. The IRS assessed sanctions against the plan for two improper loans and questioned several other transactions. Id. The IRS, however, did not revoke the plan's qualified status. Id. When Youngblood went bankrupt in 1989, he claimed his IRA as exempt property under section 42.0021 of the Texas Property Code. Id. One of his creditors objected, arguing that because the plan was not qualified, Youngblood's IRA was not exempt. Id. The bankruptcy court agreed and ruled that the plan was not qualified. Id.

On appeal, Youngblood[1] argued that the bankruptcy court was precluded from finding that the plan was not qualified because the IRS had already concluded otherwise. Id. This court held

---

[1] During the pendency of the litigation, William Youngblood died, but the suit was carried on by his wife.

6

that the key issue in deciding the case was whether the Texas legislature, in enacting section 42.0021, "contemplated that its courts would independently decide whether particular violations were sufficiently serious to merit the ultimate sanction of disqualification especially when the IRS has made a contrary determination." Id. at 229. We decided the Texas legislature intended that courts defer to the IRS in determining whether a plan is qualified. Id. In so holding, we stated:

> We see no reason that the legislature would want its courts, which are inexperienced in federal tax matters, to second-guess the IRS in such a complex, specialized area. We find it much more reasonable to assume that the legislature contemplated creating an exemption from seizure for a debtor's retirement funds that could be simply and readily determined by referring to the federal tax treatment of those funds. Moreover, we do not believe that the legislature wanted to adopt a scheme that invites frequent, unseemly, conflicting decisions between the state court or bankruptcy court, and the IRS, such as occurred in this case.

Id.

This case, then, hinges on this court's decision in Youngblood--whether it stands for the proposition that a bankruptcy court can never question an IRS determination that a plan is qualified, as contended by Plunk, or whether it permits a bankruptcy court, in limited circumstances, to undertake its own analysis of a plan's qualified status, as urged by Appellees. We have found no other circuit court case considering this question, nor has any Texas court addressed this issue. But see Jones v. Am. Airlines, Inc., 131 S.W.3d 261, 270 (Tex. App.-Fort Worth

7

2004, no pet.) (determining that <u>Youngblood</u> did not apply to the situation in that case).

Appellees argue that the instant appeal is distinguishable from <u>Youngblood</u> because the IRS in <u>Youngblood</u> had considered the misconduct at issue and decided not to disqualify the plan. Here, the IRS has not audited the Plan or ruled whether Plunk's abuse of Plan assets warrants disqualification. We agree that this distinction is significant.

As a review of the <u>Youngblood</u> decision shows, our two primary concerns in requiring deference to the IRS were (1) the conflicting results that might be reached if the courts and the IRS made separate, independent determinations of a plan's qualified status; and (2) the IRS's greater experience and familiarity with the I.R.C. and related regulations. <u>See</u> <u>Youngblood</u>, 29 F.3d at 229. Our desire to avoid conflicting results is not implicated when, as here, the IRS has never ruled whether certain conduct requires a plan to be disqualified. Instead, the courts will be able to make that determination based on the evidence presented to them, without fear of inconsistency with a previous IRS decision.

Our remaining concern that the IRS is more familiar with the tax code and regulations is not sufficient to require deference to an out-dated IRS decision. Both state and federal courts routinely interpret IRS rules and regulations. <u>See, e.g.</u>, <u>Coppola v. Beeson</u> (<u>In re Coppola</u>), 419 F.3d 323, 327-29 (5th Cir.

8

2005) (interpreting provisions of the I.R.C. and various regulations); Beard v. Beard, 49 S.W.3d 40, 69-70 (Tex. App.-Waco 2001, pet. denied) (same).

We, therefore, hold that when disqualifying events occur after the IRS has last determined that a plan is qualified, a court may, under section 42.0021 of the Texas Property Code, determine that a plan is no longer qualified based on those events. See Dzikowski v. Blais (In re Blais), 220 B.R. 485, 489 (S.D. Fla. 1997) (considering Youngblood and reaching a similar result under Florida law).

Turning to the facts of this case, it had been years since the IRS determined the Plan was qualified, and then only as to its structure. The IRS never considered Plunk's abuse of Plan assets or audited the Plan to determine whether it was operationally qualified despite Plunk's actions. Therefore, the bankruptcy court and district court were permitted to reach an independent decision regarding the Plan's qualified status and were not bound by the previous IRS determination under Youngblood. As a result, we affirm the district court's decision on this point.[2]

B.   Whether Res Judicata or Collateral Estoppel Preclude Plunk's Ownership Argument

---

[2]   Because we have decided that the lower courts were not bound by the IRS's previous statement, we do not reach Appellees' argument that Plunk's inability to participate in the IRS's Voluntary Compliance Program renders the Plan unqualified.

We next consider whether the bankruptcy and district courts properly determined that res judicata and collateral estoppel precluded Plunk from challenging Hibernia's, and thus Comerica's, ownership of the judgment against him. Because we may affirm the lower courts on any ground supported by the record, In re Mirant, 440 F.3d at 245, we first turn to collateral estoppel.

Texas rules of preclusion apply, as we are dealing with the effect of a state court judgment. See Fielder v. King (In re King), 103 F.3d 17, 19 n.2 (5th Cir. 1997). Under Texas law, collateral estoppel is used to prevent a party from relitigating an issue that it previously litigated and lost. Quinney Elec., Inc. v. Kondos Entm't, Inc., 988 S.W.2d 212, 213 (Tex. 1999) (per curiam). The party invoking collateral estoppel must establish "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst, 90 S.W.3d 268, 288 (Tex. 2002). Here, by seeking to use the judgment in the 1992 garnishment action to prevent Plunk from arguing that Comerica does not own the judgment in the instant case, Comerica is seeking to invoke collateral estoppel in an offensive, as opposed to defensive, manner. See Fletcher v. Nat'l Bank of Commerce, 825 S.W.2d 176, 177 (Tex. App.-Amarillo 1992, no writ) (discussing difference between offensive and defensive collateral

10

estoppel).

On appeal, Plunk's only contention is that the fact of Hibernia's ownership of the judgment was not fully and fairly litigated in the 1992 garnishment action. He cites to precedent identifying the following factors that a court is to take into account in deciding whether to apply offensive collateral estoppel:

> (1) Whether use of collateral estoppel will reward a plaintiff who could have joined in the previous action but chose to "wait and see" in the hope that the first action by another plaintiff would result in a favorable judgment;
>
> (2) Whether the defendant in the first action had the incentive to litigate the previous suit fully and vigorously;
>
> (3) Whether the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result; and
>
> (4) Whether the judgment in the first action is inconsistent with any previous decision.

Scurlock Oil Co. v. Smithwick, 787 S.W.2d 560, 563 (Tex. App.- Corpus Christi 1990, no writ); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-31 (1979) (listing similar factors). Texas courts are given discretion in applying these factors. See Scurlock, 787 S.W.2d at 563. Plunk's arguments fall primarily under the second factor, and the remaining three factors do not weigh in his favor.

Plunk argues that he had little incentive to contest the 1992 garnishment action because it only concerned a nominal

11

amount of money.  He also contends that there was no express finding that Hibernia owned the judgment.  We have reviewed the evidence of the 1992 garnishment action submitted to the bankruptcy court.  The amount at issue was not large, but Plunk did file an answer through counsel and contested whether some of the money belonged to him or his wife.  This level of participation suggests that Plunk did not consider the amount nominal enough to refrain from participating in the suit altogether.

With respect to Plunk's argument that there was no express finding that Hibernia owned the judgment, we note that, under Texas garnishment law, the plaintiff must own a judgment against the defendant in order to obtain a writ of garnishment.  See TEX. CIV. PRAC. & REM. CODE ANN. § 63.001.  Further, agreed judgments in Texas have the same degree of finality and binding force as judgments reached at the end of adversary proceedings.  Forbis v. Trinity Universal Ins. Co. of Kan., Inc., 833 S.W.2d 316, 319 (Tex. App.-Fort Worth 1992, writ dism'd) (finding an agreed judgment binding for collateral estoppel purposes).  Therefore, the agreed judgment entered in the 1992 garnishment action necessarily required that Hibernia own the judgment at issue.

Consequently, the lower courts were correct in determining that the 1992 garnishment action may be used to collaterally estop Plunk from contesting Hibernia's ownership of the judgment.  As a result, we affirm the decision to lift the stay to permit

the state garnishment action proceed.

## IV. CONCLUSION

For the reasons above, we affirm the decisions of the lower courts.

AFFIRMED.