IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 24, 2008

Charles R. Fulbruge III
Clerk

No. 07-20349
Summary Calendar

In The Matter Of:   GOLDEN OIL COMPANY

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ENERGEN RESOURCES CORPORATION

Appellant-Cross-Appellee

v.

GOLDEN OIL COMPANY

Appellee-Cross-Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-2239

Before JONES, Chief Judge, and REAVLEY and PRADO, Circuit Judges.

PER CURIAM:[*]

Energen Resource Corporation appeals the district court's decision to affirm the bankruptcy court's order: (1) denying Energen's request for attorneys'

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

fees, and (2) requiring the execution of an escrow agreement in a form objectionable to Energen. Golden Oil Company initially filed a cross-appeal, but has since abandoned those issues. For the following reasons we affirm the decision of the district court.

## BACKGROUND

The relevant factual background is uncontested and a detailed account is set forth in the district court's memorandum opinion and order. Briefly, Golden filed for Chapter 11 Bankruptcy in May 2003. Energen, a creditor with a shared interest in several of Golden's oil wells, filed a proof of claim and an objection to Golden's proposed plan of reorganization. Energen sought assurances that Golden would bear any future plugging and abandonment costs associated with the wells. Specifically, Energen sought an appropriate security interest in the subject wells to ensure it would not have to pay any plugging costs out of pocket. In May 2004 Golden filed an Amended Plan Modification, agreeing to grant Energen a "first priority lien on all . . . production oil and gas proceeds." The Modification also provided that Golden would place funds in escrow for the satisfaction of future plugging costs.

On October 6, 2004 Energen and Golden appeared at the confirmation hearing and announced they had reached a settlement. Energen clarified several points of the settlement on the record, including the parties' agreement that Energen would receive a mortgage on the well properties. The parties represented to the court that they would execute the documents necessary to implement the settlement, and the bankruptcy court confirmed the plan.

Some months later, after extensive negotiations, the parties still had not reached agreement on the form of the settlement documents. Energen filed a Motion to Enforce Settlement in June 2005, asking the court to require Golden

to execute Energen's proposed documents. Golden responded that Energen's proposed documents were overly lengthy, complex, and exceeded the terms of the settlement. Chief causes of disagreement were the nature of Energen's security interest in the subject wells, and the scope of Energen's power to declare a default and institute foreclosure proceedings on Golden's assets.

In July 2005 the court ordered the parties to negotiate in good faith and submit proposed documents in sixty days if no agreement had been reached. Unable to agree, the parties submitted proposed documents, and the court appointed an expert to review the competing documents and advise the court on the usual, customary, and appropriate forms necessary to consummate the settlement. The court received a report from the expert and held multiple hearings on the substance of the settlement, including a two-day hearing on the Motion to Enforce in May 2006. After the May 2006 hearing, the court issued its Findings of Fact and Conclusions of Law, ordering the parties to submit settlement documents that conformed to the parameters of the settlement as the court best understood it.

The parties submitted another set of proposed documents, and the final hearing before the bankruptcy court was held on June 19, 2006. Several issues were still unresolved, but the court was unwilling to send the parties away for what it concluded would be another round of fruitless negotiations. The court went through the proposed documents one by one with the parties and resolved all outstanding disagreements.[1] Also before the court was Energen's request for attorneys' fees, which was denied. Energen and Golden executed the documents

---

[1] With the exception of the escrow arrangement, discussed below, the parties do not object to the bankruptcy court's resolution of their disputes.

in the form ordered by the court, and an appeal to the district court followed. The district court affirmed. Before this Court, Energen seeks reversal of the bankruptcy court on two points: (1) the denial of Energen's request for attorneys' fees, and (2) the order requiring an escrow agreement in a form not satisfactory to Energen.

DISCUSSION

This court reviews the decisions of a bankruptcy court using the same standard applied by the district court. In re Plunk, 481 F.3d 302, 305 (5th Cir. 2007). Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. Id. Further, while an award of attorneys' fees is typically left to the discretion of the court, some statutes make an award of attorneys' fees mandatory if certain conditions are met. See Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 603 & n.2 (5th Cir. 2000) (discussing Tex. Civ. Prac. & Rem. Code § 38.001(8)).

I.    Energen's claim for Attorneys' Fees

We first consider Energen's argument that it is entitled to attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001(8), which provides that a person may recover attorneys' fees on a claim for breach of contract.[2] Energen claims the settlement announced to the court on October 6, 2004 was a binding contract, which Energen prevailed upon through its Motion to Enforce. This is a somewhat novel question, whether an agreement resolving objections to a bankruptcy plan may support recovery of attorneys' fees under Texas state law. Nonetheless, we find it unnecessary to decide the issue today, because the

---

[2] The confirmed bankruptcy plan provided that Texas law would govern the construction and implementation of the plan and "any agreements, documents, and instruments executed in connection with this Plan."

agreement announced by the parties on October 6, 2004 lacked the basic elements of an enforceable contract.

Where the essential terms of an agreement are left open for future negotiations, there is no mutual assent, and no binding contract. Sweeney v. Cross, 476 S.W.2d 464, 465 (Tex. App. 1972). Here, though the parties claimed to have reached an agreement on October 6, 2004, subsequent events made it plain that several key elements of the settlement were left unresolved. After two years of negotiations, numerous hearings, a report from a court-appointed expert, and multiple versions of proposed documents from both parties, the bankruptcy court still spent several hours on June 19, 2006, going through the disputed documents with counsel one by one in an effort to scrape together an agreement.

Energen claims it is the prevailing party because it received a mortgage on the well properties, not merely a lien on well production. But Energen's victory on this one issue does not change the fact that there was insufficient mutual assent to form a contract in the first place. See Sweeney, 476 S.W.2d at 465 (mutual assent "must comprehend the whole of the proposition"). Even when both Golden and Energen were working to draft an acceptable mortgage,[3] several key provisions were unresolvable, and the mortgage the bankruptcy court finally ordered was not entirely what either party desired. This is not to

---

[3] After announcing an agreement on October 6, 2004, both Energen and Golden submitted proposed mortgages to the court, though the parties disagreed sharply over the details. After the court-appointed expert recommended a security interest in well proceeds rather than a mortgage, the court ordered Golden to submit a proposed security agreement. When the court later rejected the security agreement and ordered Energen and Golden to confer on a proposed mortgage in May 2006, the parties did so, but still could not agree on essential details prior to the hearing on June 19, 2006.

mention the other documents that had to be resolved by the court on June 19, 2006. As the court pointed out at that final hearing, the parties should have finished negotiating their agreement before announcing it to the court. After expending considerable time and effort to define the terms of the parties settlement, the bankruptcy court concluded the agreement announced on October 6, 2004 was too "deficient" to justify an award of attorneys' fees. Based on our own review of the record, we agree.

II.    Energen's objection to the Escrow Agreement

Energen's remaining objection concerns the form of escrow agreement ordered by the bankruptcy court. At the court's order, both Energen and Golden submitted a proposed escrow agreement. After receiving expert testimony that the two forms were largely identical, the court approved Golden's version, with modifications. Energen insists its own version should have been used, citing ¶ 6.13.2 of the amended plan, which provided for an escrow account "the terms of which are to be satisfactory to Energen." But as the bankruptcy court noted at the February 23, 2006 hearing, this did not mean that there could be "no agreement other than the one [Energen] agree[d] to. . . . it would have to be a reasonable agreement." This was a correct statement of the law: under Texas law satisfaction clauses incorporate an objective reasonableness standard. Texas Dept. of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc., 92 S.W.3d 477, 481 (Tex. 2002). The appropriate test is "whether the performance would satisfy a reasonable person." Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc., 760 S.W.2d 298, 302 (Tex. App. 1988).

Here the court articulated the correct standard, received expert testimony, and based the final escrow agreement on Golden's submission. The bankruptcy

court correctly read a reasonableness requirement into the section of the plan requiring escrow in a form "satisfactory to Energen." Energen has not explained on appeal how the proposed documents were substantially different, much less that the adopted version would not satisfy a reasonable person. We find no reversible error in the bankruptcy court's resolution of this issue.

## CONCLUSION

The judgment of the district court is AFFIRMED.