IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-50803

In The Matter Of: N A FLASH FOUNDATION INC

　　　　　　　　　　　　　　　　　　　　　Debtor

-----------------------------------------------------

TRUSTEE JOHN PATRICK LOWE

　　　　　　　　　　　　　　　　　　　　　Appellant

v.

PALMETCO INC

　　　　　　　　　　　　　　　　　　　　　Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:05-CV-814

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PRADO, Circuit Judge:[*]

　　　In this appeal, we are called upon to decide whether Texas law concerning construction trust funds and materialman's liens prevents a bankruptcy trustee from avoiding three prepetition transfers of funds as preferential transfers under

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

11 U.S.C. § 547(b). Because the creditor in this case would have received the same amount in a hypothetical Chapter 7 proceeding as a result of Texas construction trust fund law as it did in the allegedly preferential transfers, we affirm the district court's decision to refuse to avoid the transfers. Consequently, we need not decide whether an alternative analysis based on materialman's liens would reach the same result.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the bankruptcy proceedings of Debtor N.A. Flash Foundation, Inc. ("NA Flash"). NA Flash is a contractor who works directly with property owners to make concrete foundations for houses. Appellee Palmetco, Inc. ("Palmetco") is a supplier of re-enforcing steel, which is used by builders in the foundations of buildings. Palmetco was a subcontractor on many of NA Flash's projects.

In October 2003, NA Flash made three transfers of money to Palmetco in payment of debts that NA Flash owed: $5,710.50 on October 3, 2003; $10,000.00 on October 6, 2003; and $24,100.00 on October 20, 2003. The payments totaled $39,810.50. The first two transfers were made by cashier's checks drawn on NA Flash's general operating account, and the third transfer was made when NA Flash endorsed a check from Paradise Homes over to Palmetco. Upon receipt of these checks, Palmetco released its materialman's liens on various properties and refrained from filing materialman's liens on other properties.

On December 29, 2003, NA Flash filed for Chapter 7 bankruptcy. NA Flash's bankruptcy trustee, Appellant John Patrick Lowe ("the Trustee"), filed the instant adversary proceeding against Palmetco in an attempt to recover the three transfers described above. The Trustee alleged that he could avoid the transfers because they were preferential transfers under 11 U.S.C. § 547(b), which provides as follows:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made--
>
>> (A) on or within 90 days before the date of the filing of the petition; or
>>
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if--
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The parties stipulated to subsections (1), (2), (3), and (4)—specifically, that the transfers were (1) made for the benefit of Palmetco, (2) on account of an antecedent debt, (3) while NA Flash was insolvent, and (4) within ninety days of NA Flash's Chapter 7 petition. The parties could not agree on whether the transfers were "of an interest of the debtor [NA Flash] in property" and whether the transfers enabled Palmetco to receive more than it would have received if the transfers had not been made, the case had been filed under Chapter 7, and Palmetco had received payment in accordance with the eventual distribution (subsection (5)).

The bankruptcy court held a short hearing on May 24, 2005, and heard testimony from the Trustee, the president of Palmetco, and Palmetco's attorney. The testimony indicated that, because of the transfers, Palmetco received 100%

of what it was owed, while the unsecured creditors were going to receive five cents on the dollar. Palmetco defended the transfers under Texas law regarding materialman's liens and construction trust funds. Palmetco's president testified that it was Palmetco's usual practice to follow all of the requirements for perfecting a materialman's lien under Texas law whenever NA Flash was late on its payments. Palmetco's president also testified that Palmetco was typically able to recover 100% of the money that it was owed whenever it used the lien procedures. The bankruptcy court then took the matter under advisement. On June 28, 2005, the bankruptcy court issued its decision orally and made several findings of fact, ultimately deciding that the Trustee had failed to demonstrate a preferential transfer because Palmetco would have received the same amount in a bankruptcy proceeding through either a materialman's lien or a construction trust fund.

The Trustee appealed to the district court for the Western District of Texas. The district court held that Palmetco would have received the same amount of money under a construction trust fund theory, but not under a materialman's lien theory. Although the district court styled its order as affirming in part, reversing in part, and remanding, the order was essentially an affirmance as it left the bankruptcy court's judgment intact. The Trustee has appealed to this court.

## II. JURISDICTION AND STANDARD OF REVIEW

When a district court remands a case to the bankruptcy court for further proceedings, this court makes a two-prong inquiry to determine whether it may exercise appellate jurisdiction over the district court's decision. Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.), 157 F.3d 414, 420 (5th Cir. 1998). First, we decide whether the order of the bankruptcy court was final in character, and second, we decide whether the district court's remand requires extensive further proceedings. Id. Here, the answers to those

questions clearly demonstrate that appellate jurisdiction exists. The bankruptcy court's order was a final order—it resolved all of the issues between the parties, determined that the Trustee would take nothing, and assigned costs against the Trustee. The district court's order, although indicating a remand, left nothing for the bankruptcy court to do, as the district court did not alter the bankruptcy court's judgment. Therefore, in light of the finality of the bankruptcy court's order and the lack of a need for any further proceedings, we may exercise jurisdiction over the Trustee's appeal.

We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied. Plunk v. Yaquinto (In re Plunk), 481 F.3d 302, 305 (5th Cir. 2007). A bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. Id. This court may affirm on any grounds supported by the record, even if those grounds were not relied upon by the lower courts. Id.

## III. DISCUSSION

The question raised by the Trustee on appeal is whether the bankruptcy court and district court erred in concluding that Palmetco would have received the same amount in a Chapter 7 proceeding as it did in the allegedly preferential transfers. Pursuant to 11 U.S.C. § 547(g), the Trustee generally has the burden of proving the elements of a preferential transfer. See Jenkins v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.), 81 F.3d 592, 596 (5th Cir. 1996). Thus, the Trustee must establish that, in a hypothetical Chapter 7 proceeding, Palmetco would not have received as much as it did from the allegedly preferential transfers. In this case, the Trustee's evidence consisted of demonstrating that NA Flash made the transfers to Palmetco out of NA Flash's general operating account, enabling Palmetco to recover 100% of what it was owed, while NA Flash's unsecured creditors received approximately five cents

5

on the dollar. As noted above, Palmetco relied on Texas law concerning materialman's liens and construction trust funds to argue that it would have received 100% of what it was owed regardless of any preferential transfer. We now consider what effect Texas construction law has on the outcome of this case.

A.    Preferential Transfers

As described in § 547(b)(5), for a transfer to be preferential, the creditor must receive more from the transfer than it would have received if the case had proceeded under Chapter 7, the transfer had not been made, and the creditor had received payment of its debt to the extent provided under the bankruptcy laws. This analysis requires the court to construct a hypothetical Chapter 7 liquidation and determine what the creditor would have received had the transfers not taken place. Cunningham v. T & R Demolition, Inc. (In re ML & Assocs., Inc.), 301 B.R. 195, 202 (Bankr. N.D. Tex. 2003). If the creditor receives a greater percentage of its debt as a result of the prepetition transfer than it would have in a bankruptcy distribution, the transfer is preferential. See Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.), 171 F.3d 249, 253-54 (5th Cir. 1999). In constructing a hypothetical Chapter 7 case, we are to assume that all persons would act in a commercially reasonable and businesslike manner. In re ML & Assocs., 301 B.R. at 202.

Further, the alleged preferential transfer must not diminish or deplete the debtor's estate. Lovett v. Homrich, Inc. (In re Philip Servs. Corp.), 359 B.R. 616, 630 (Bankr. S.D. Tex. 2006); see also Cage v. Wyo-Ben, Inc. (In re Ramba, Inc.), 437 F.3d 457, 460 (5th Cir. 2006) ("Essentially, a voidable preference must have depleted the estate."). This is because the preferential transfer statute was designed, in part, "to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all." Triad Int'l Maint. Corp. v. S. Air Transp., Inc. (In re S. Air Transp., Inc.), 511 F.3d 526, 530 (6th Cir. 2007) (internal quotation marks omitted). Thus, as the

Fourth Circuit stated, the relevant inquiry focuses "not on whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever," but instead on whether the creditor would have recovered 100% of the debt from the debtor's estate. Smith v. Creative Fin. Mgmt., Inc. (In re Virginia-Carolina Fin. Corp.), 954 F.2d 193, 199 (4th Cir. 1992). Here, Palmetco argues that Texas law concerning materialman's liens and construction trust funds would result in Palmetco recovering 100% of what it was owed without depleting NA Flash's estate. We turn first to construction trust funds, as that is the theory relied on by the district court.

B.      Construction Trust Funds

Texas law concerning construction trust funds is found in Chapter 162 of the Texas Property Code. Pursuant to § 162.001(a), "Construction payments are trust funds under this chapter if the payments are made to a contractor . . . under a construction contract for the improvement of specific real property in this state." "A contractor . . . who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." Id. § 162.002. A subcontractor who furnishes labor or material for an improvement on a specific piece of real property is a beneficiary of any trust funds paid or received in connection with the improvement. Id. § 162.003. Subsequent provisions of Chapter 162 make it a Class A misdemeanor for a trustee to misapply trust funds. Id. § 162.032. The construction trust fund is self-executing—in other words, there are no procedures with which a subcontractor must comply before the contractor is obligated to hold the funds in trust. See Exchanger Contractors, Inc. v. Comerica Bank-Tex. (In re Waterpoint Int'l L.L.C.), 330 F.3d 339, 345 (5th Cir. 2003) (noting that funds are required to be held in trust under Chapter 162 without regard to the subcontractor's compliance with any lien procedures).

Both the bankruptcy court and the district court used the construction trust fund concept to conclude that Palmetco would have received the same

amount in a hypothetical Chapter 7 proceeding as it did from the allegedly preferential transfers. In a hypothetical case, NA Flash would be required to hold the amounts received from property owners in trust for its subcontractors on those projects, including Palmetco, or face criminal liability for misuse of trust funds. TEX. PROP. CODE ANN. §§ 162.001(a), 162.032. Therefore, in the hypothetical bankruptcy proceeding, where the court is to presume everyone will act reasonably, NA Flash would have held any payments it received on Palmetco projects between October 2003 (when the transfers hypothetically never took place) and December 29, 2003 (the date of the bankruptcy), in trust for Palmetco; otherwise, NA Flash would have faced criminal liability. The trust funds would have given Palmetco a priority claim to the funds in the subsequent bankruptcy proceeding. See Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1118 (5th Cir. 1995) (noting that money in a constructive trust gives the claimant priority over the debtor's unsecured creditors); see also Begier v. I.R.S., 496 U.S. 53, 59 (1990) (stating that money held in trust for another is not property of the debtor for purposes of § 547(b)). Consequently, in a hypothetical proceeding, Palmetco would have received 100% of the money it was owed, and NA Flash's estate would not be depleted of any money that would have otherwise been available to the unsecured creditors.[1]

The Trustee's only argument in response is that Palmetco conceded that it could not prove a construction trust fund theory and that the district court refused to make a finding on whether a construction trust fund theory would apply in this case. The Trustee errs, though, by conflating two areas in which construction trust funds and preferential transfers intersect. As described

---

[1] The Trustee did not set forth any evidence to dispute Palmetco's claim that NA Flash would have received at least $39,810.50 in payments subject to a constructive trust fund during the relevant time period. It was the Trustee's burden to demonstrate that a 100% recovery was not possible; thus, his failure to present any evidence on this issue is fatal to his claim.

above, construction trust funds can be used in a hypothetical Chapter 7 proceeding to demonstrate that Palmetco would have received the same amount in a bankruptcy case as it did from the allegedly preferential transfers. This is the theory argued by Palmetco and relied upon by the district court.

A separate argument concerning construction trust funds is whether the funds that were actually transferred in October 2003 were "of an interest of the debtor in property." See 11 U.S.C. § 547(b). The idea behind this second theory is that, to the extent NA Flash transferred trust funds in October 2003, it did not transfer any interest it had in property, as NA Flash would have no interest in funds held in trust for another. See Begier, 496 U.S. at 58 ("The reach of § 547(b)'s avoidance power is therefore limited to transfers of 'property of the debtor.'"); Vulcan Materials Co. v. Jack Raus, Inc. (In re HLW Enters. of Tex., Inc.), 157 B.R. 592, 596-98 (Bankr. W.D. Tex. 1993) (holding that transferred funds were trust funds under Chapter 162 and therefore not the property of the debtor). It is this second theory—that the funds actually transferred to Palmetco were construction trust funds—that Palmetco conceded and the district court declined to consider, primarily because Palmetco could not prove that the specific funds transferred were funds that NA Flash had been holding in trust for Palmetco.[2]

Consequently, Palmetco's concession that it could not refute the Trustee's evidence that the $39,810.50 transferred to Palmetco was NA Flash's property

---

[2] Specifically, the exchange before the district court was as follows:

Mr. Lowe [Trustee]: Your Honor, is the Court finding that, in each of the three transfers, there was a transfer of the interest of the Debtor in property?

The Court: I'm avoiding that issue. You can take that up on appeal. If it goes up on appeal, you can argue the trust fund theory. So, I'm not making a finding on the trust fund theory.

Similarly, when Palmetco conceded that it could not make out the requirements of the trust fund theory, it was referring to its inability to trace the transferred funds to a specific project—a requirement of the second type of trust fund theory.

has no effect on Palmetco's other construction trust fund argument regarding the hypothetical Chapter 7 proceeding. As described above, because the law of construction trust funds would provide Palmetco with a full recovery in a hypothetical Chapter 7 proceeding, the Trustee has failed to demonstrate that the transfers at issue were preferential under § 547(b). As a result, we affirm the judgment of the district court and need not consider whether an analysis of the law regarding materialman's liens would lead to the same conclusion.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court and decline to avoid the transfers to Palmetco.

AFFIRMED.