# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00357-CV

**Constructors & Associates, Inc., Appellant**

**v.**

**First National Bank of Cameron, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CV30,426, HONORABLE ED MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This dispute involves competing claims on a series of construction subcontracts. After Tedco Electric, Inc. ("Tedco") filed bankruptcy, First National Bank of Cameron (the "Bank"), a lender with a secured interest in Tedco's accounts receivable, initiated suit against Constructors & Associates, Inc. ("Constructors") for payment of the outstanding balances on ten construction subcontracts between Constructors and Tedco. In response to the parties' competing motions for summary judgment, the district court granted summary judgment in favor of the Bank and denied Constructors' motion. We reverse the trial court's grant of summary judgment, affirm its denial of Constructors' summary-judgment motion, and remand the case to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Constructors is a general contractor engaged in commercial construction throughout Texas. Between November 2001 and August 2004, Constructors entered into a series of subcontracts with Tedco where Tedco agreed to provide electrical work for ten of Constructors' projects. At least three of these subcontracts contained identical language providing that,

> If Subcontractor [Tedco] defaults or fails to carry out the Work in accordance with the Subcontract and fails within twenty-four (24) hours after receipt of written notice from Constructors to commence and continue correction of such default or failure to perform with diligence and promptness, Constructors may, without prejudice to any other remedies otherwise available to Constructors, make good such deficiencies through its own efforts and deduct the cost thereof from payments then or thereafter due Subcontractor.

In order to complete the subcontracts, Tedco further contracted with three sub-subcontractors (the "suppliers") to purchase goods, materials, and services for the Constructors projects.

In February 2004, Tedco executed two promissory notes payable to the Bank. One note was secured by Tedco's equipment. The other note, in the amount of $2,144,654, was secured by Tedco's "accounts and other rights to payment . . . whether or not earned by performance" and perfected by a financing statement.

On August 24, 2004, Constructors sent notice to Tedco that Tedco was in default "on numerous Austin and San Antonio Projects" and should, within 24 hours, provide proof of financial security and a plan to pay all vendors. When Tedco did not respond by August 26, Constructors notified Tedco that it was "hereby terminated on any and all projects with Constructors."

On August 31, Tedco filed for Chapter 7 bankruptcy. As of the petition date, Constructors still owed Tedco $883,291.90 on the subcontracts.[1] Shortly after Tedco filed for bankruptcy, the bankruptcy court granted the Bank leave from the automatic stay to collect the assets named as collateral in the Bank's promissory notes. After other relevant collateral was collected, Tedco still owed the Bank $1,650,634.03.[2] The Bank sent notice to Constructors that its perfected security interest in Tedco's accounts receivable required that Constructors pay the Bank $883,291.90, the remaining balance on the subcontracts between Constructors and Tedco. Constructors responded that because Tedco defaulted on the subcontracts, the subcontracts' curative-measures provision allowed Constructors to withhold payment to Tedco and use the unpaid contract balance to complete the projects that Tedco failed to complete. Constructors claimed that it spent the entire $883,291.90 subcontract balance along with an additional $859,113.52—for a total of $1,742,405.42—to complete Tedco's unfinished work. The expenses necessary to complete Tedco's projects included $948,374.22 in payments made to the suppliers (materialmen hired by Tedco as sub-subcontractors on the projects) to fulfill Tedco's contractual obligations under the sub-subcontracts. Because Constructors' cost to complete Tedco's unfinished work exceeded the remaining balance on the subcontracts between Constructors and Tedco, Constructors claimed that it did not owe Tedco any money, and therefore the Bank had no claim.

---

[1] The record does not indicate whether this balance represented work yet to be done or whether it also included money earned but not yet paid.

[2] The record does not indicate which portion of this balance originated from the promissory note secured by Tedco's accounts receivable, as opposed to the other promissory note secured by Tedco's equipment.

After Constructors failed to pay the Bank, the Bank filed suit in district court for breach of contract, conversion, declaratory judgment, and attorney's fees. The parties filed cross-motions for summary judgment and, after a hearing on the motions, the district court granted the Bank's motion for summary judgment and denied Constructors' motion. The trial court further ordered that Constructors pay the Bank $883,291.90 plus interest.[3] Constructors now appeals the granting of the Bank's summary-judgment motion and the denial of its own.

## STANDARD OF REVIEW

We review the district court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to traditional summary judgment if (1) there are no genuine issues of material fact, and (2) it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant is entitled to no-evidence summary judgment if an adverse party presents no evidence of one or more essential elements of its claim or defense. *Id.* R. 166a(i). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence*, 164 S.W.3d at 661. When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides and determine all questions presented. *Id.*

---

[3] While this order stated that it was not a final order for the purposes of appeal because the Bank's request for attorney's fees remained pending, the Bank later nonsuited its attorney's-fees claim and the trial court entered a final judgment in favor of the Bank on October 20, 2010.

4

**DISCUSSION**

Constructors bases its appellate arguments on the assumption that the trial court granted the Bank's summary-judgment motion on the ground that the Bank prevailed on its conversion claim as a matter of law. Though the trial court stated during the hearing, "I'm going to grant the Plaintiff's motion for summary judgment, finding that . . . this did constitute a conversion of funds that were due to the bank," the Bank's motion for summary judgment did not clearly identify the claim on which it requested summary judgment nor does the written order granting summary judgment specify on what grounds the order was granted.[4] The arguments made and relief requested in the Bank's motion, however, are inconsistent with either its breach of contract or declaratory judgment claims.[5] Therefore, we conclude that the Bank presented grounds for summary judgment based solely on its conversion claim. The Bank did not appear to pursue its remaining claims for breach of contract or declaratory judgment following the trial court's grant of summary judgment on its conversion claim, and in its final judgment, the trial court declared that "all relief not expressly granted in this cause is hereby denied." We will affirm the Bank's summary judgment if we find that the Bank proved conversion as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (holding that when

---

[4] A trial court's comments during a hearing do not constitute written findings and conclusions and do not limit the grounds upon which an order may be upheld on appeal. *See Larry F. Smith, Inc. v. Weber Co.*, 110 S.W.3d 611, 615 (Tex. App.—Dallas 2003, pet. denied).

[5] The relief requested in the Bank's motion, an award of $883,291.90, is not consistent with that of a declaratory judgment claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008) (identifying judicial declaration as proper relief in declaratory judgment action). Further, the motion never alleges that Constructors breached any contract either to the Bank or to Tedco. Though the Bank's motion did claim that Constructors owed Tedco money and that the Bank had a priority claim on that money, it never alleged that this debt resulted in a breach of any contract.

5

order does not state specific grounds for summary judgment, appellate court will uphold summary judgment on any ground presented in motion). Constructors sought both no-evidence and traditional summary judgment on the Bank's declaratory judgment, breach of contract, and conversion claims.

While the parties generally agree on the relevant facts, they join issue as to which party's claim to the subcontracts' $883,291.90 outstanding balance takes priority under the circumstances presented. Because this question of law impacts our discussion of both the Bank's and Constructors' motions for summary judgment, we will begin by addressing which party's claim takes priority.

According to Constructors, the Bank's claim to the balance of the subcontracts was superseded by two distinct priorities: first, the funds owed to Tedco's suppliers are trust funds under the Texas Property Code and therefore the suppliers' right to payment, as beneficiaries of the trust funds, took priority over the Bank's secured claim; second, the subcontracts' terms allowed Constructors to offset any costs to remedy Tedco's default against the remainder of the contract balance.

*Texas Construction Trust Fund Act*

The Texas Construction Trust Fund Act, located in chapter 162 of the property code, provides that any funds to a contractor, subcontractor, or supplier made in payment of labor and materials are held in trust for all parties in the construction chain. Tex. Prop. Code Ann. §§ 162.001-.033 (West 2007 & Supp. 2010); *Vulcan Materials Co. v. Jack Raus, Inc.*, 157 B.R. 592, 597 (Bankr. W.D. Tex. 1993) (finding that "once the owner makes a payment to either the general contractor or to a subcontractor, that payment gives rise to a trust for all parties in the subcontract chain"). The

6

statute was enacted to protect materialmen, laborers, contractors, and subcontractors and should be given a broad construction to effectuate its protective purposes. *Vulcan Materials*, 157 B.R. at 597. In accordance with the act, all funds owed by Constructors to Tedco under the subcontracts were trust funds as a matter of law held for the benefit of the suppliers. *See* Tex. Prop. Code Ann. §§ 162.001-.002. Trust funds may only be distributed for purposes unrelated to the construction project after all current or past due obligations to the supplier beneficiaries have been paid. *See id.* § 162.031. There are no procedural requirements for a subcontractor or supplier to qualify for protection under the Texas Construction Trust Fund Act. *See In re Waterpoint Int'l, LLC*, 330 F.3d 339, 345 (5th Cir. 2003).

When two competing claims exist, one under the construction trust fund act and the other as an assignee money lender, the trust fund claim takes priority. *See Stone Fort Nat'l Bank v. Elliott Elec. Supply, Inc.*, 548 S.W.2d 441, 446 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) ("[U]nder the statute and the authorities, [the materialman] was entitled to the trust funds in preference to the [secured lender]."); *Panhandle Bank & Trust Co. v. Graybar Elec. Co., Inc.*, 492 S.W.2d 76, 81 (Tex. Civ. App.—Amarillo 1973, writ ref'd n.r.e.) (stating that case law established "the preferred position of materialmen and laborers over assignee money lenders in ascertaining priorities as to the distribution of retained funds under construction contracts"). This priority does not disappear in bankruptcy, as trust funds are not part of the bankruptcy estate. *See Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) (stating that money held in trust for another is not property of debtor for purposes of bankruptcy code preferences); *In re N.A. Flash Found. Inc.*, 298 Fed. Appx. 355, 360 (5th Cir. 2008) (concluding that in hypothetical bankruptcy, trust funds under Texas Construction Trust Fund Act gave subcontractor priority claim to funds).

Therefore, the suppliers had a priority claim to any funds held in trust, i.e., each subcontract's entire balance, to fulfill any sub-subcontract debts against Tedco related to that project. Because the suppliers' claims for payment took priority over the Bank's, any part of the $883,291.90 outstanding balance used to pay a supplier's claim on that project was properly paid. The Bank's conversion claim fails as a matter of law as to those amounts.

The summary-judgment record presented here, however, does not provide the information necessary to ascertain what portion of the subcontracts' outstanding balances were paid to the suppliers for their sub-subcontract debts. The record contains an expense schedule created by Constructors that lists both the amount still owed on the subcontracts between Constructors and Tedco and the amount paid by Constructors to the suppliers on their sub-subcontracts with Tedco, segregated by individual subcontract. However, both parties agree that the subcontract balances reflected in this schedule are incorrect. The schedule indicates that Tedco and Constructors' total outstanding balance for all subcontracts is $1,084,393.73, but the parties agree that additional payments were made to Tedco in its last days that reduced the total balance due to $883,291.90. These payments were unaccounted for in Constructors' schedule and the evidence does not indicate how the additional payments were allocated among the individual projects' balances.

The suppliers' trust-fund claims to the subcontracts' balances are specific to each individual subcontract,[6] and require calculation on a project-by-project basis. However, the record before us does not reflect the correct subcontract balance for each individual project. It is unclear how much of each project's balance would remain after giving priority to the suppliers' claims.

---

[6] This is due to the chain-of-construction nature of the construction trust fund act's protection.

Though as a matter of law Constructors was entitled to pay at least some portion of the subcontracts' balances to the suppliers who held debts on each project, under the record presented here we cannot calculate the exact portion of the Bank's claim that would be preempted by these priority payments.

Taking as true all evidence favorable to Constructors and indulging every reasonable inference in Constructors' favor, we hold that the Bank failed to meet its summary-judgment burden because, as a matter of law, Constructors' suppliers had a priority claim under the Texas Construction Trust Fund Act to some portion of the remaining subcontracts' balances.[7] We therefore reverse the trial court's summary judgment.

*Contractual Setoff*

We next address Constructors' claim that the subcontracts with Tedco contained language contractually permitting Constructors to use the outstanding contract balance to pay for damages resulting from Tedco's default. Though Constructors provided summary-judgment evidence that Tedco defaulted on "numerous Austin and San Antonio projects," it never produced any evidence regarding which specific subcontracts Tedco breached.[8] Because the contractual setoff language cited by Constructors is dependent on Tedco's default, any claim of a contractual right to setoff fails on summary judgment if, as here, no evidence exists of Tedco's default on any specific contract. Further, the summary-judgment evidence contains only three of the ten relevant contracts.

---

[7] Alternatively, the Bank failed to meet its summary-judgment burden because it provided no evidence showing what portion of Tedco's $1,650,634.03 outstanding debt originated from the note secured by Tedco's accounts receivable. Therefore, the Bank did not prove what portion of the $883,291.90 balance it would be entitled to if its claim were successful.

[8] Though Constructors' termination of all subcontracts with Tedco created an inference that Tedco breached all of the subcontracts, no affirmative statement to that effect was made.

9

It is not clear from the record how many of the ten contracts even contain language regarding a right to setoff. Without knowing on which contracts Tedco defaulted, we cannot analyze Constructors' defense of contractual setoff.

For the reasons discussed above, Constructors failed to meet either its no-evidence or traditional summary-judgment burdens. Constructors' no-evidence motion for summary judgment fails as to the declaratory judgment and conversion claims because the Bank provided some evidence that it has a claim to the balance of the subcontracts. Its no-evidence motion fails as to the breach of contract claim because the Bank produced some evidence that a contract existed between Tedco and Constructors and that the terms of the contract were not fulfilled. In its traditional motion for summary judgment, Constructors failed to conclusively negate any element of the Bank's claims for breach of contract, declaratory judgment, or conversion.[9] Constructors also presented a number of affirmative defenses in response to the Bank's three claims. On appeal, Constructors argues that it conclusively established its affirmative defenses of conditions precedent, offset, payment, waiver and estoppel, and fiduciary duty. All of these affirmative defenses relate to either Constructors' rights under the construction trust fund act or its right to a setoff under the contract. Because fact issues remain on these two issues, Constructors failed to prove the affirmative defenses as a matter of law. The trial court properly denied Constructors' motion for summary judgment.

---

[9] In addition to its contention that it conclusively negated the element of conversion regarding the Bank's right to the subcontracts' balances, Constructors also claims that the Bank failed to prove that the subcontracts' balances constituted chattel that may be converted. A claim lies for conversion of money when the identification of the money is possible and there is an obligation to deliver the specific money in question. *See AIG Life Ins. Co. v. Federated Mut. Ins. Co.*, 200 S.W.3d 280, 285 (Tex. App.—Dallas 2006, pet. denied). The subcontracts' balances meet this characterization and are therefore chattel capable of being converted.

## CONCLUSION

We reverse the trial court's summary judgment in favor of the Bank and affirm its denial of Constructors' motion for summary judgment. We remand this case to the trial court for further proceedings consistent with this opinion.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed in part; Reversed and Remanded in part

Filed: July 14, 2011