# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31011
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2019

Lyle W. Cayce
Clerk

In the Matter of:  SAMUEL TAYLOR FREE,

Debtor,

------------------------------------

SAMUEL TAYLOR FREE,

Appellant

v.

LEASA G. WINBORNE,

Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC 3:17-CV-1606

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

After a state court entered judgment against Samuel Taylor Free and in favor of Leasa G. Winborne, Free filed for bankruptcy. Winborne brought an adversary proceeding in Free's bankruptcy case seeking to prevent the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31011

discharge of the state-court judgment. The bankruptcy court, finding Free's actions to be willful and malicious, excluded the judgment from the discharge, and the district court affirmed. Free appeals again. We AFFIRM.

## I.

At the time of James C. Winborne's death, he and defendant Samuel Taylor Free were the only members of two limited liability companies: Turkey Creek Holding Company, LLC ("Turkey Creek Holding"), under which they bought and sold real estate, and Turkey Creek Appraisal Services, LLC ("Turkey Creek Appraisal") (collectively, "the LLCs"), under which they performed real-estate appraisals. James Winborne and Free each held a 50% interest in each of the LLCs. Leasa G. Winborne, James Winborne's wife, was his sole legatee. After James Winborne's death, a state court issued a judgment of possession providing Leasa with possession of James's 50% interest in each of the LLCs.

In the meantime, Free continued to do business as Turkey Creek Appraisal and received checks payable to Turkey Creek Appraisal in return for his work. But rather than depositing these checks into the company's account, as required by Turkey Creek Appraisal's operating agreement, Free cashed the checks or deposited the funds into non-Turkey Creek Appraisal accounts. He then used these funds for personal items. Leasa Winborne did not receive any of these profits.

Leasa Winborne brought suit in state court against Free seeking to recover her share of these profits, arguing that Free converted company funds for his own use. After a trial, the state court awarded Winborne $42,071, court costs, $1,500 in expert fees, and interest. Shortly thereafter, Free filed a petition for Chapter 13 bankruptcy. Winborne instituted an adversary proceeding, seeking a determination that her state-court judgment was

2

No. 18-31011

nondischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(6). The bankruptcy court granted Free's motion to dismiss Winborne's § 523(a)(2) claim.

The bankruptcy court then tried Winborne's § 523(a)(6) claim. Subsection (a)(6) excludes from discharge any debt arising out of the debtor's willful and malicious injury to another. § 523(a)(6). At trial, Free testified that he believed the LLCs had been dissolved because he thought he was the only member of the LLCs after James Winborne's death and he thought he had unilaterally dissolved the companies. He also testified that he used the funds to pay Turkey Creek Appraisal's bills and employees. He did not provide any documentary proof of those payments. Moreover, the bankruptcy court found Free's testimony contradictory, evasive, and not credible. Thus, the bankruptcy court concluded, Free intentionally breached the operating agreements, intended to cause harm to Leasa Winborne, and in fact caused her harm. Accordingly, the bankruptcy court found the debt nondischargeable. Free appealed to the District Court for the Western District of Louisiana, which affirmed. Free appeals again.

## II.

"We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re McClendon*, 765 F.3d 501, 504 (5th Cir. 2014) (quoting *In re TransTexas Gas Corp.*, 597 F.3d 298, 304 (5th Cir. 2010)). Thus, we review conclusions of law de novo and findings of fact for clear error. *Id.*

## III.

Free argues that Leasa Winborne's adversary proceeding was barred by collateral estoppel. To determine the preclusive effect of a state-court judgment, a court must apply the rules of preclusion of the state where the judgment was rendered. *Plunk v. Yaquinto (In re Plunk),* 481 F.3d 302, 307

3

(5th Cir. 2007). Under Louisiana law, the three requirements for issue preclusion are: "(1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment." *Liberty Mut. Fire Ins. Co. v. Weaver*, 219 So. 3d 442, 445-46 (La. Ct. App. 3d Cir. 2017) (quoting *Horrell v. Horrell*, 808 So. 2d 363, 373 (La. App. 1st Cir. 2000)); *see also* La. Rev. Stat. § 13:4231(3). But the bankruptcy court has exclusive jurisdiction over the dischargeability of debts, and it may only defer to the doctrine of collateral estoppel "if, *inter alia,* the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue— and the facts supporting the court's findings are discernible from that court's record." *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994).

Here, Free argues that Leasa Winborne already litigated whether his actions were willful and malicious in the state court: she pleaded conversion in her complaint, but the state court's judgment did not address the conversion claim. Therefore, Free reasons, the state court's silence "constitutes an absolute rejection of such demand," and the bankruptcy court erred by concluding that he intentionally deprived Winborne of Turkey Creek Appraisal's profits. But a finding of conversion under Louisiana law does not require that the defendant have acted willfully or maliciously. *See Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998) ("A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel."). Thus, even

assuming the state court's silence constituted a rejection of the conversion claim, it cannot be said that the issue of Free's willfulness and maliciousness was adjudicated. And the state court's judgment does not otherwise discuss whether Free caused willful and malicious injury to Winborne. Therefore, the state court's judgment does not prevent the bankruptcy court from adjudicating the issue of willfulness and maliciousness when determining dischargeability.

Collateral estoppel does, however, prevent this court from considering Free's other argument. Free argues that § 3.2 of the LLCs' operating agreements provided that only members—not assignees—could vote. Free contends that after James Winborne's death, he was the only member of the LLCs and he voted to dissolve them. Therefore, he argues, he was within his rights to retain any money he earned from appraisals. But the state-court judgment had already determined that Leasa Winborne was entitled to the profits, and to do so, it would have had to determine that the business was not dissolved after James Winborne's death. Therefore, because Leasa Winborne's entitlement to the funds under the terms of the operating agreements was already litigated and essential to the state court's determination, Free cannot relitigate the issue now.

Finally, Free argues that Leasa Winborne does not have an individual cause of action for harm to the company and that she must bring her claims as a derivative suit. Although Winborne brought both direct and derivative claims, the state-court judgment does not explain whether it entered judgment in her favor as an individual or as a representative of the LLCs. Free contends that the judgment's "silence" is a rejection of the derivative claim. But there was no such silence here—rather, the state court's judgment is simply unclear. And, as the district court pointed out below, Winborne was the only party able to be injured regardless of whether her claims were brought individually or on

behalf of the LLCs. Therefore, Free's argument that the state court had already rejected the derivative action is without merit.

Thus, we are left to consider the bankruptcy court's finding that Free acted willfully and maliciously, which we review for clear error. The bankruptcy court found that Free intentionally breached the operating agreements by cashing Turkey Creek Appraisal's checks or depositing them in his own account, ignoring Leasa Winborne's ownership interest as assignee. Although Free testified that he did not believe that Leasa Winborne would inherit James Winborne's interest in the partnership, the bankruptcy court also determined that Free was an unreliable witness and found his answers to be contradictory and evasive. In contrast, the bankruptcy court found Leasa Winborne's testimony to be consistent and largely free from impeachment. Moreover, Free signed the operating agreements, which provided that each member's shares would pass to his assignee in the event of his death. We agree that Free knew that by not paying Leasa Winborne for her portion of the proceeds, there was a substantial certainty of harm to her, and that he intended to cause that harm. Thus, as the bankruptcy court held, Free's retention of Turkey Creek Appraisal's profits after James Winborne's death was intentional, willful, and malicious. *Miller v. J.B. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998) ("[A]n injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm.").

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.